# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2583

_____

| | | |
|---|---|---|
| Guadalupe Arellano-Garcia, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales, Attorney General | * | |
| of the United States,[1] | * | [PUBLISHED] |
| | * | |
| Respondent. | * | |
| | * | |

_____

Submitted: March 15, 2005
Filed: December 7, 2005

_____

Before WOLLMAN, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Guadalupe Arellano-Garcia, a native and citizen of Mexico, seeks review of a decision of the Board of Immigration Appeals (BIA) affirming the order of an

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States and is substituted as the respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Immigration Judge (IJ), finding that he is ineligible for discretionary relief from deportation and ordering his removal to Mexico. We deny the petition for review.

Arellano-Garcia entered the United States in September 1977. In August 1987, he became a temporary permanent resident. On October 12, 1988, Arellano-Garcia pleaded guilty to possession for sale of cocaine in a California state court, and he served nine months in prison on a two-year sentence. There is no dispute that this drug trafficking offense is considered an aggravated felony under the Immigration and Nationality Act (INA) § 101(a)(43)(B). 8 U.S.C. § 1101(a)(43)(B) (2000). Because of his conviction, the former Immigration and Naturalization Service (now part of the Department of Homeland Security) deported Arellano-Garcia on June 2, 1989. Three days later, on June 5, 1989, Arellano-Garcia re-entered the United States using his temporary permanent resident card, which had not been taken from him when he was deported. Despite his conviction and prior deportation, the agency mistakenly approved Arellano-Garcia's application for permanent residency in February 1990, and Arellano-Garcia thereafter submitted an application for naturalization in April 1999.

When the agency realized that Arellano-Garcia had been convicted of a drug trafficking offense in 1988 and deported in 1989, it placed Arellano-Garcia in removal proceedings. Arellano-Garcia conceded removability (Petitioner's Br. at 8), but sought relief from removal under INA § 212(c) (repealed in 1996), under which some "[a]liens lawfully admitted for permanent residence" were eligible for a waiver of removal at the discretion of the Attorney General. See 8 U.S.C. § 1182(c) (1994), repealed by Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-597 (Supp. II 1996); I.N.S. v. St. Cyr, 533 U.S. 289, 295 & 326 (2001) (holding, *inter alia*, that § 212(c) relief remains available for aliens who pleaded guilty prior to the repeal of the statute and who would have been eligible for § 212(c) relief at the time of their plea). The Immigration Judge held that Arellano-Garcia was not statutorily eligible to apply for a waiver of removal pursuant to § 212(c) because, as a result of his 1988 drug

trafficking conviction, he was not "lawfully" granted permanent resident status in 1990. The BIA affirmed. In his petition for judicial review, Arellano-Garcia challenges the legal conclusion that he is not eligible to apply for § 212(c) relief.

We first consider whether we have jurisdiction to address the substance of Arellano-Garcia's claim. Generally, we lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii) [or] (B)," 8 U.S.C. § 1252(a)(2)(C) (2000), which includes a drug trafficking offense like Arellano-Garcia's 1988 conviction. The Attorney General concedes, however, and we agree, that in § 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (May 11, 2005), to be codified at 8 U.S.C. § 1252(a)(2)(D), Congress amended the INA by restoring jurisdiction in the circuit courts to review "questions of law" and "constitutional claims" in a petition for review challenging a removal order. See Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005) ("Pursuant to the REAL ID Act of 2005, however, we retain jurisdiction to review constitutional claims and questions of law.") Because Arellano-Garcia presents questions of law and constitutional claims, we have jurisdiction to address the merits of his petition for review.

"We review questions of law de novo and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005). Arellano-Garcia asserts that the BIA erred in concluding as a matter of law that he was not a "lawfully admitted permanent resident" within the meaning of the now repealed § 212(c). Arellano-Garcia attempts to sidestep the issue of whether he was "lawfully" admitted, however, by urging that he should be "deemed" a lawfully admitted permanent resident because the Attorney General's authority to rescind permanent residence status on the ground that the alien was not eligible for the adjustment is limited to five years, which has long since passed. See INA § 246(a); 8 U.S.C. § 1256(a) (imposing a five-year limitation on the

Attorney General's ability to initiate rescission of an adjustment of status on the ground that the alien was not eligible for the adjustment). He reasons that deportation is not permitted where the misconduct in obtaining the adjustment, which the Attorney General did not act upon within the five-year limit, is the sole ground for deportation, citing Bamidele v. I.N.S., 99 F.3d 557, 565 (3d Cir. 1996) (holding that § 1256(a) prohibits the initiation of deportation proceedings based exclusively on fraud in obtaining the adjustment of status). The Attorney General asserts that the five-year limit on initiating rescission proceedings in § 1256 does not bar the initiation of deportation proceedings even when the alleged grounds for deportation are acts committed in procuring the adjustment of status, citing Matter of Belenzo, 17 I & N Dec. 374, 384 (Att'y Gen. 1981) (holding that the five-year limitation period for correcting mistakes in granting permanent resident status does not bar deportation proceedings, even when deportation is sought for acts committed in procuring the adjustment), and Asika v. Ashcroft, 362 F.3d 264, 270-71 (4th Cir. 2004) (per curiam) (deferring to the Attorney General's interpretation of the statute as permissible and reasonable), cert. denied, 125 S. Ct. 861 (2005).

Arellano-Garcia's reliance on the five-year limitation on rescission proceedings is misplaced, and we need not comment on the cases cited above. This case does not require us to construe the five-year limitation period on rescission proceedings. The current proceedings are based on Arellano-Garcia's prior conviction, not on the erroneous grant of permanent residency status. Arellano-Garcia concedes that he is deportable on the basis of his prior conviction, and he does not challenge the decision to initiate enforcement proceedings on that basis. See 8 U.S.C. § 1227(a)(2)(B)(i) (stating that an alien convicted of a controlled substance offense is deportable).[2]

---

[2]As made clear by the rescission statute since its amendment in 1996, the Attorney General was not required to rescind Arellano-Garcia's adjusted status prior to initiating deportation proceedings. See 8 U.S.C. § 1256(a) ("Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien . . . and an order of removal issued

Additionally, the Attorney General conceded at oral argument that he cannot prove that Arellano-Garcia made any fraudulent misrepresentations in his adjustment proceedings, so this is not a case where the deportation proceedings are based solely upon fraud in the procurement of the permanent residency status, but a case where that favorable status was obtained by a negligent mistake made by the government.

Thus, we are asked to decide whether an alien who received an adjustment to permanent residency status by a mistake can be considered an alien "lawfully admitted for permanent residence" within the meaning of the now repealed INA § 212(c); 8 U.S.C. § 1182(c) (1994). We conclude that he cannot.

The INA defines the term "lawfully admitted for permanent residence" as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States." 8 U.S.C. § 1101(a)(20). This definition is somewhat circuitous, and where there is ambiguity, we must give deference to the agency's interpretation, if it is reasonable. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) (requiring courts to consider first whether Congress has directly spoken to the precise question at issue, and if not, whether the agency's interpretation is reasonable; "the court does not simply impose its own construction on the statute").

The Attorney General has adopted the interpretation articulated by the Fifth and Ninth Circuits, stating that the term "'lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity.'" In re Koloamatangi, 23 I & N Dec. 548, 550 (BIA 2003) (quoting Matter of Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983), cert. denied, 467 U.S. 1219 (1984), and citing Monet v. INS, 791 F.2d 752, 753 (9th Cir. 1986)). These cases state without ambiguity that lawful status is required, not simply lawful procedure. Monet, 791 F.2d at 754; Longstaff, 716 F.2d at 1441.

---

by an immigration judge shall be sufficient to rescind the alien's status.").

While the BIA's opinion in <u>Koloamatangi</u> dealt with an alien who had obtained his status adjustment fraudulently, the reasoning articulated is not limited to cases of fraud. The opinion notes with approval that "the Fifth and Ninth Circuits each decided that the term 'lawfully admitted for permanent residence' did not apply to aliens who had obtained their permanent residence by fraud, <u>or had otherwise not been entitled to it</u>." <u>Koloamatangi</u>, 23 I & N Dec. at 550 (emphasis added). <u>See also</u> <u>Lai Haw Wong v. I.N.S.</u>, 474 F.2d 739, 742 (9th Cir. 1973) (holding that a "mistaken admission conferred no status, permanent resident or otherwise" and thus the aliens were not "lawfully admitted").

We conclude that the agency's interpretation of "lawful," which is based upon circuit court precedent, is reasonable and applies not only where there has been fraud in the procurement of the adjusted status, but also to a situation where the alien was not entitled to an adjustment but received it by a negligent mistake of the agency. Arellano-Garcia may have received the adjustment through lawful procedure, and thus he reaped the benefits of permanent residence status until the mistake was discovered, but we defer to the BIA's reasoned statutory interpretation and conclusion that he never "lawfully" acquired the status through that mistake. We will not "deem" him to be a "lawfully admitted permanent resident" when he obtained permanent residence status through a mistake and was not otherwise eligible for the status adjustment. Therefore, Arellano-Garcia was not eligible for § 212(c) relief.

Arellano-Garcia also argues that the Attorney General violated his due process rights when it deported him in 1989 without first revoking his temporary residence status. There is no indication in the record that he asserted this claim in the 1989 deportation proceedings, when he was charged with entry without inspection and being convicted of a controlled substance offense, and he did not appeal that deportation order to the BIA. We will not address an issue collaterally attacking the validity of the first deportation order, raised for the first time in a petition for review of the second deportation proceedings. <u>See</u> <u>Briones-Sanchez v. Heinauer</u>, 319 F.3d

324, 327-28 (8th Cir. 2003) (rejecting a collateral attack against a prior immigration order where the alien had failed to exhaust administrative remedies in the initial deportation proceedings). Furthermore, "[i]n order to succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him." Id. at 327. Arellano-Garcia cannot demonstrate the necessary prejudice to establish a due process violation. Even if he had preserved the issue, it is indisputable that his drug trafficking conviction rendered his temporary residence status revocable.

We reject out-of-hand Arellano-Garcia's assertion that he was denied a full and fair hearing in the present deportation proceedings. Arellano-Garcia received all the process that he was due, including a full and fair hearing, because he was statutorily ineligible to apply for a § 212(c) waiver.

Finally, Arellano-Garcia asserts that his removal from the United States without any consideration of the effect this will have on his children, who are citizens of the United States, violates Article 9 of the United Nations Convention on the Rights of the Child (CRC), Nov. 20, 1989, 28 I.L.M. 1448, 1460-61. The CRC has not been ratified by the Senate. See Roper v. Simmons, 125 S. Ct. 1183, 1199 (2005) (recognizing that every country in the world has ratified the CRC except for the United States and Somalia). Congress has clearly expressed in the INA its intent to remove certain aliens, as in this instance, without a separate consideration of the impact of that removal upon the alien's children, and we need not consider international law. See Bradvica v. I.N.S., 128 F.3d 1009, 1014 n.5 (7th Cir. 1997) (stating "international law is not applicable in domestic courts where there is a controlling legislative act").

For the reasons stated, we deny Arellano-Garcia's petition for review.

_____