[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-10966

_____

BIA No. A29-826-372

KARL SAVOURY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 25, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

Karl Savoury lawfully entered the United States as a visitor from Jamaica in

1984. In September 1988 he was arrested on state drug charges in Newark, New

Jersey. In March 1991 while those charges were pending, Savoury married a citizen of this country and later that same month he filed for an adjustment of status based on his marriage. At his adjustment interview, Savoury told the INS officer about his arrest and the pending criminal charges. The officer asked Savoury to inform him about the final disposition of the criminal charges.

On May 18, 1992, Savoury pleaded guilty to and was convicted of possession of cocaine with intent to distribute in the third degree, a felony, and his counsel thereafter provided the INS officer who had conducted the adjustment of status interview with a letter informing him of the conviction. On August 5, 1992, the INS adjusted Savoury's status to lawful permanent resident. (The cases sometimes refer to this status as simply "permanent resident" and so will we.) Under 8 U.S.C. § 1186a(a)(1), when an adjustment to that status is based on marriage to a citizen that was entered into less than twenty-four months previously the adjustment is conditional. In the ninety-day period before the second anniversary of the grant of status, the alien and spouse must submit a joint application to remove the conditional basis. Id. at § 1186a(c) & (d). The Savourys did that, and on August 18, 1994 the INS granted their application to remove the conditional basis of his permanent resident status.

Thereafter Savoury filed an application for naturalization, but it was denied because of insufficient evidence of child support. The denial document did not

2

mention Savoury's conviction.  Savoury requested a review of the denial, and the INS affirmed it on September 5, 2002.  Records from Savoury's naturalization proceedings confirm that the INS had knowledge of his conviction at the time his status was adjusted to permanent resident.  The "Continuation Processing Worksheet" of Savoury's application for naturalization included a notation, dated May 6, 2002, which states:  "As per consultation with a SDAO [Supervisory District Adjudications Officer], the Service knew about this conviction at the time of adjustment, therefore, we have to DNR this arrest."  At oral argument counsel for Savoury stated that "DNR" stands for "Do Not Relate"and means that the INS would not relate or connect the arrest to Savoury's file.  The INS has not contended that "DNR" has any other meaning.

After a brief trip abroad, Savoury attempted to reenter this country on December 2, 2002.  The INS detained him and issued a notice to appear, charging him with removability under INA § 212(a)(2)(A)(i)(II) on the ground that he was inadmissible due to his prior conviction.  After an amendment to the notice to appear regarding his conviction date, Savoury admitted the allegations in the notice but denied removability and requested relief under INA § 212(c).  After a hearing, the immigration judge determined that Savoury was removable under INA § 212(a)(2)(A)(i)(II) and that he was also ineligible for § 212(c) relief because his

original adjustment to permanent resident status was not lawful. The BIA agreed with the IJ and dismissed Savoury's appeal. Savoury petitioned us for review.

## I.

The first thing we must decide is whether to grant the government's motion to dismiss the petition for lack of jurisdiction. That motion is based on this provision of the INA:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) . . . of this title.

8 U.S.C. § 1252(a)(2)(C). Those words fit Savoury's petition for review because his state drug offense conviction is covered by § 1182(a). See 8 U.S.C. § 1182(a)(2)(A)(i)(II).

Even though § 1252(a)(2)(C) says what it does, courts still have jurisdiction not only to decide if the conditions that bar jurisdiction exist—whether the petitioner (1) is an alien (2) who is removable (3) by reason of having committed a crime covered by § 1252(a)(2)(C)—but also to decide any substantial constitutional challenges. Sebastian-Soler v. U.S. Att'y Gen., 409 F.3d 1280, 1283 (11th Cir. 2005). In its motion to dismiss, the government contends that because Savoury fits the criteria that bar jurisdiction and raises no substantial constitutional challenges, we lack jurisdiction to rule on the merits of his petition.

4

After the government filed its motion to dismiss, however, the REAL ID Act of 2005 became law. It added to the law a provision now codified as 8 U.S.C. § 1252(a)(2)(D), which states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). That provision applies retroactively "to all pending proceedings regardless of the date of the final administrative order." Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1360 (11th Cir. 2005); see also Tovar-Alvarez v. U.S. Att'y Gen., 427 F.3d 1350, 1352 (11th Cir. 2005) (recognizing that the REAL ID Act has given this Court jurisdiction to review questions of law raised in a petition for review even though § 1252(a)(2)(C) applied). In his petition, Savoury does not dispute the BIA's factual determinations but raises questions of law. Because of § 1252(a)(2)(D) we have jurisdiction to decide those legal issues. Savoury prevails on the jurisdictional issue; but that is all he is entitled to prevail on in this proceeding.

## II.

When the BIA issues a decision we review only that decision, except to the extent that it expressly adopts the immigration judge's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA does

5

adopt the IJ's reasoning, we review the IJ's reasoning as well. Id. In this case the Board expressly adopted and affirmed the IJ's decision with a few additions, so we will review his decision as supplemented by the Board. On a petition for review of a final order of removal, we will defer to the BIA's statutory interpretation if it is reasonable. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). Naturally, if we would have reached the same interpretation ourselves we will inevitably decide that it is a reasonable one.

At the hearing and after it Savoury admitted the factual allegations charged in the notice to appear. The notice to appear charged Savoury with being removable pursuant to "[s]ection 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or admits having committed, or admits committing acts which constitute the essential elements of, a violation or a conspiracy or attempt to violate any law or regulation of a State . . . relating to a controlled substance." He does not dispute that he was convicted of state felony drug charges or that it made him removable under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II). Savoury requested relief under former INA § 212(c), which provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

6

Jaramillo v. INS, 1 F.3d 1149, 1151 (11th Cir. 1993) (quoting the since repealed INA § 212(c), 8 U.S.C. § 1182(c) (emphasis added)).  Savoury contends that he is eligible for § 212(c) relief because he is an alien lawfully admitted for permanent residence who, when detained, was returning to his lawful unrelinquished domicile of seven consecutive years in the United States after a brief, voluntary trip abroad.

Section 212(c) was repealed in 1996, but the Supreme Court partially extended its availability in INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271 (2001). The St. Cyr  decision holds that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  Id. at 326, 121 S. Ct. at 2293. Savoury pleaded guilty in 1992 while § 212(c) was still in effect.  Under St. Cyr he could apply for relief from the removability that arose from his conviction, which made him removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II).  In order to obtain § 212(c) relief, however, Savoury had to demonstrate that he was "lawfully admitted for permanent residence" and was "returning to a lawful unrelinquished domicile of seven consecutive years."  See INA § 212(c) (repealed 1996).  The duration of his unrelinquished domicile has never been disputed, but the nature of that domicile or his status during it has been and is the central contest of this appeal.

7

The immigration judge did not question that the INS knew of Savoury's conviction at the time it adjusted him to lawful permanent resident status in 1992, but the judge believed that made no difference. He determined that Savoury was not entitled to § 212(c) relief because he had "not shown that he acquired his lawful permanent residence lawfully, and therefore he was not lawfully admitted for permanent residence." In reaching that conclusion the IJ looked to cases in which the petitioner had initially acquired permanent residence through fraud and reasoned that the same rationale applied to Savoury's case. The IJ determined that for § 212(c) eligibility purposes no difference exists between a petitioner who obtained legal status by INS mistake and one who obtained it through fraud on the INS. On that basis the IJ ruled that Savoury was ineligible for 212(c) relief or other cancellation of removal and ordered him removed. The BIA expressly adopted and affirmed the IJ's decision, adding a few thoughts of its own. The Board cited its prior decision in Matter of Koloamatangi, 23 I. & N. Dec. 548 (BIA 2003), as the immigration judge had. About that decision the Board stated: "In that case, we held that the correct interpretation of the term 'lawfully admitted for permanent residence' is that an alien is deemed, ab initio, never to have obtained lawful permanent resident status once his original ineligibility is determined in proceedings." The Board said that "lawfully admitted for permanent residence" does not apply to aliens who either obtained that status by fraud (which is not this

8

case) or who were given it though not entitled to it (which is this case). Because Savoury was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) at the time he was initially adjusted to permanent resident status, he was not entitled to that adjustment in status, and for that reason the Board treated him as though he had never obtained it.

## A.

The first issue before us is whether it was reasonable for the Board to interpret the statutory phrase "lawfully admitted for permanent residence" in the way it did. We think it was. The adverb "lawfully" requires more than the absence of fraud. It requires consistency with all applicable law. According to 8 U.S.C. § 1101(a)(20), "lawfully admitted for permanent residence" is "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (emphasis added); see also Matter of Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983) ("The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity."); Black's Law Dictionary 902 (8th ed. 2004) (defining "lawful" as "[n]ot contrary to law; permitted by law"). The applicable immigration law includes 8 U.S.C. § 1182(a)(2)(A)(i)(II), which renders Savoury inadmissible because of his conviction. That law helps define, by exclusion, eligibility for permanent resident

9

status and should have been applied to deny Savory permanent resident status in 1992. Because Savoury was rendered ineligible for permanent resident status by § 1182(a)(2)(A)(i)(II), the award of that status to him was not consistent with the law; it was not lawful; it was not "in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20).

What we have said is enough to convince us that the Board's interpretation of § 212(c)'s "lawfully admitted for permanent residence" language is reasonable, and we could stop with that. However, the lawyers have spent a lot of time talking about various decisions, as lawyers do, and we will discuss those decisions.

In reaching the decision that Savoury was not lawfully admitted, the Board and the immigration judge primarily relied on Koloamatangi, 23 I. & N. Dec. 548. Unlike Savoury's case, that case involved fraud on the INS by the petitioner. See id. at 549. The fraud in Koloamatangi was that the petitioner had obtained permanent resident status by holding out a bigamous marriage as a valid one. Id. The BIA determined that the petitioner was not entitled to INA § 240A(a)[1] relief

_____

[1] INA § 240A(a) replaced § 212(c), the provision at issue in this case, and for present purposes is materially identical to the earlier one. It provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

10

because he had never been "lawfully admitted for permanent residence." Id. at 551. The Board held that once it is determined that an alien was originally ineligible for permanent resident status, he would be deemed never to have obtained that status, or more accurately never to have obtained it lawfully. Id.

In reaching its decision in Koloamatangi, the BIA considered a 1996 amendment to the regulatory definition of "lawfully admitted for permanent residence." Id. at 549. As we have noted, the statutory definition of that term is "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The regulations contain the same definition, see 8 C.F.R. § 1.1(p), but in 1996 an additional sentence was added to the end of the definition in the regulations. See Koloamatangi, 23 I. & N. Dec. at 549 (discussing amendment to 8 C.F.R. § 1.1(p)). That added sentence states: "Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal." 8 C.F.R. § 1.1(p). Koloamatangi argued that the amendment applied to him and that he had made it to the five-year point as an alien admitted for permanent residence before a final administrative order was entered against him. Koloamatangi, 23 I. & N. Dec. at 549.

---

8 U.S.C. § 1229b(a).

11

The Board rejected Koloamatangi's argument, reasoning that the amendment was intended to clarify that "an alien's permanent resident status, which had been lawfully obtained, terminated with the entry of a final administrative order of deportation" and did not turn on when the alien physically departed the country. Id. It explained that: "There is no indication that the addition of the final sentence was intended to undermine the long-standing decisions holding that an alien was not 'lawfully' admitted for permanent resident status if, at the time such status was accorded, he or she was not entitled to it."[2] Id.

Savoury contends that the Koloamatangi decision is limited to cases involving fraud and that the BIA should not have extended the holding of that decision to cover his situation, which came about because of the Board's own screw up. The more apt decision in his view is Matter of Ayala, 22 I. & N. Dec. 398 (BIA 1998), where the arguments were turned upside down. Ayala had

---

[2]Savoury makes the same contention that Koloamatangi did about the amendment to 8 C.F.R. § 1.1(p), and we reject it for the same reasons that the Board gave in that case. The regulation, as amended, does nothing more than clarify the effective date of rescission when an alien, who, unlike Savoury, was "lawfully" admitted as a permanent resident, loses that status.

In a related thought, Savoury contends that based on INA § 246(a), 8 U.S.C. § 1256(a), an IJ's ruling rescinding an alien's status is effective as of the date of the order of removal. He argues that renders wrong the BIA's holding that his status was void from the beginning. What § 246(a) does is establish a five-year statute of limitations for the Attorney General to bring rescission proceedings and further clarifies that an IJ's order of removal may also act as a rescission of status even if it is issued after that five year period. See 8 U.S.C. § 1256(a). That provision has nothing to do with whether an alien who was not entitled to permanent resident status was "lawfully admitted for permanent residence."

12

entered this country in 1991 and was admitted as a permanent resident. Id. at 399.

Thereafter, he was convicted of conspiracy to defraud the United States, and that

conviction led to deportation proceedings. Id. Ayala sought a waiver under INA §

212(h), id. at 398–99, but that provision rules out a waiver for "an alien who has

previously been admitted to the United States as an alien lawfully admitted for

permanent residence if . . . the alien has not lawfully resided continuously in the

United States for a period of not less than 7 years." 8 U.S.C. § 1182(h). Because

he had not resided continuously in this country for seven or more years, Ayala

sought to establish that he had not been lawfully admitted to begin with. Ayala, 22

I. & N. Dec. at 400. He argued that at the time he was admitted he had been

involved in the ongoing criminal conspiracy for which he was later convicted and

for that reason his admission as a permanent resident had not been lawful. Id.

Absent lawful admission, Ayala contended, he was not subject to the requirement

of seven years of continuous residence before a § 212(h) waiver could be granted.

Id.

In rejecting Ayala's argument, the Board noted that § 212(h) distinguishes

between those who have been previously admitted for permanent residence and

those who have not. Id. at 401. It does not distinguish "between those whose

admission was lawful and those who were previously admitted for lawful

permanent residence but are subsequently determined to have been admitted in

13

violation of the law. To read such a distinction into the statute would be arbitrary and capricious." Id.

Ayala does not apply to Savoury's situation because it focused on whether the alien had "previously been admitted" for permanent residence, not on whether he had been "lawfully admitted for permanent residence." See id. at 402. Because Ayala had previously been admitted as a permanent resident and had not accrued the seven years of lawful residence, he was ineligible for a waiver under § 212(h). Id. The different question in this § 212(c) case is not whether Savoury was previously admitted for permanent residence but whether he was lawfully admitted for permanent residence. And the answer is that Savoury was not lawfully admitted because 8 U.S.C. § 1182(a)(2)(A)(i)(II) barred his admission as a permanent resident given his felony drug conviction.

There are three court of appeals decisions close enough to the point to merit discussing. In Monet v. INS, 791 F.2d 752, 753 (9th Cir. 1986), the petitioner had obtained an adjustment of status to permanent resident alien by concealing a prior drug conviction. Id. The Ninth Circuit held that § 212(c) relief was unavailable because he had never been "lawfully admitted." Id. at 753, 755. In other words, that court reached the same conclusion in Monet as the BIA had reached in Koloamatangi. (The BIA had also reached the same decision in Matter of T-, 6 I. & N. Dec. 136, 137–38 (BIA 1954)).

14

But, as we have said, the present case does not involve an alien's fraud but the INS's error. The facts in Matter of Longstaff, 716 F.2d 1439 (5th Cir. 1983), are closer to point because they involved an honest alien who obtained a status or benefit that he was not lawfully entitled to receive under the immigration laws. Longstaff was admitted to this country after completing an "Application for Immigrant Visa and Alien Registration." Id. at 1440. On the form Longstaff indicated that he did not have a "psychopathic personality" although, unbeknownst to him, the law at that time classified his homosexuality as a psychopathic disorder. Id. When Longstaff applied for naturalization fifteen years later, his application was denied because at the time he was admitted, Longstaff was excludable under the INA because of his homosexuality and, for that reason, he had not been "lawfully admitted." Id. at 1441. The Fifth Circuit affirmed the denial of his petition for naturalization on this basis. Id.

Longstaff argued that he was eligible for naturalization because he had been admitted in a "procedurally regular fashion." Id. The Fifth Circuit rejected this "narrow reading of the term 'lawfully admitted,'" explaining that "[a]dmission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity." Id. The court noted that the statutory definition of the term "lawfully admitted for permanent residence" supported its conclusion because the definition turned on

15

whether the petitioner had been "lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." Id. (citing 8 U.S.C. § 1101(a)(20)) (emphasis added). Though innocent of any fraud, Longstaff had not been granted his status "in accordance with the immigration laws." He had been granted it in spite of immigration laws.

The Eighth Circuit recently reached the same conclusion in Arellano-Garcia v. Gonzales, 429 F.3d 1183 (8th Cir. 2005), which involved facts that are not distinguishable in any meaningful way from those in the case before us. Arellano-Garcia became a temporary permanent resident in 1987. Id. at 1184. The next year he pleaded guilty to possession of cocaine and was deported. Id. Three days after being deported Arellano-Garcia re-entered this country using his temporary permanent resident card, which had not been taken from him. Id. The INS later mistakenly approved him for permanent resident status. Id. Several years later the agency realized its mistake and placed Arellano-Garcia in removal proceedings. Id. at 1185. He conceded removability but sought a waiver under § 212(c). Id. The immigration judge ruled that Arellano-Garcia was not entitled to § 212(c) relief because he had not been lawfully granted resident status; his earlier conviction had made unlawful the purported grant of lawful resident status. Id. The BIA affirmed. Id.

16

In reviewing that ruling, the Eighth Circuit specifically noted that there was no evidence that Arellano-Garcia made any fraudulent statements or misrepresentations when he was adjusted to permanent resident status. Id. at 1186. Instead, as in the present case, the "favorable status was obtained by a negligent mistake made by the government." Id. The question presented by Arellano-Garcia's case, and by the present case, is "whether an alien who received an adjustment to permanent residency status by a mistake can be considered an alien 'lawfully admitted for permanent residence' within the meaning of the now repealed INA § 212(c)." Id. Answering that question "no," the court affirmed the BIA's decision that Arellano-Garcia was not "lawfully admitted for permanent residence." Id.

The Eighth Circuit explained that the definition given "lawful" in Koloamatangi was reasonable. Id. at 1186–87. In doing so, the court noted the BIA's reasoning was based on circuit court decisions in Longstaff and Monet, both of which had decided that lawful status is required, lawful procedure is not enough. Id. The court then elaborated on that reasoning:

> [T]he agency's interpretation of "lawful," which is based upon circuit court precedent, is reasonable and applies not only where there has been fraud in the procurement of the adjusted status, but also to a situation where the alien was not entitled to an adjustment but received it by a negligent mistake of the agency. Arellano-Garcia may have received the adjustment through lawful procedure, and thus he reaped the benefits of permanent residence status until the mistake

17

was discovered, but we defer to the BIA's reasoned statutory interpretation and conclusion that he never "lawfully" acquired the status through that mistake. We will not "deem" him to be a "lawfully admitted permanent resident" when he obtained permanent residence status through a mistake and was not otherwise eligible for the status adjustment. Therefore, Arellano-Garcia was not eligible for § 212(c) relief.

Id. at 1187. We agree with the Eighth Circuit that the Board's interpretation of § 212(c) is reasonable. Savoury did not "lawfully" acquire permanent resident status when the INS mistakenly adjusted him to that status in 1992.

We agree with the Fifth and Eighth Circuits and with the BIA that "lawfully admitted" means more than admitted in a procedurally regular fashion. It means more than that the right forms were stamped in the right places. It means that the alien's admission to the status was in compliance with the substantive requirements of the law. What is lawful depends on the law and not on administrative inadvertence or error. The BIA can no more amend or vary a statutory requirement through negligence or mistake than it can do so intentionally in deliberate defiance of a congressional mandate.

For all of these reasons we agree with the Board that Savoury was not eligible for § 212(c) relief because he was not "lawfully" admitted for permanent resident status when he was accorded that status in 1992 and when the conditional nature of it was removed in 1994. Absent some overriding affirmative defense, his petition for review is due to be denied.

18

**B.**

One affirmative defense Savoury has asserted is waiver. He contends that regardless of what the law requires, by approving his initial adjustment of status and later removing the conditional basis of that status, all with knowledge of his conviction, the INS waived the right to assert that conviction for any purpose later. To recognize such a defense would give the INS the right to amend the requirements that Congress has set forth in the immigration laws, something that we are not willing to do.

Savoury cites the decision in Matter of G-A-, 7 I. & N. Dec. 274 (BIA 1956), where the BIA exercised its discretion to grant § 212(c) relief to an alien who had lawfully attained permanent resident status and otherwise met the requirements of that provision. Id. at 276. The special inquiry officer had denied § 212(c) relief because he noted that even if it were granted, the respondent would still be subject to deportation under a different section of the INA. Id. at 275. In reversing the denial of § 212(c) relief the BIA explained that once it had "waived" under § 212(c) a ground of inadmissibility based on a criminal conviction, a deportation proceeding would not be instituted based on that same criminal conviction, unless the Attorney General revoked the previous grant of relief. Id. That is not what happened here.

By citing <u>Matter of G-A-</u> for his waiver argument, Savoury is confusing "waiver" in the formal, lawfully granted § 212(c) relief sense with waiver as an affirmative defense based on non-assertion of authority that is not statutorily sanctioned. Unlike the alien in <u>Matter of G-A-</u>, Savoury had not been lawfully admitted for permanent resident status and he was not eligible for § 212(c) relief, which is characterized in INA-speak as a "waiver." He wants us to prevent the INS from enforcing the immigration laws based on its earlier failure to do so. The alien in <u>Matter of G-A-</u> did not ask for that.

## C.

Closely related to the concept of waiver is the affirmative defense of estoppel. Savoury asserts that the INS is estopped by its previous actions and inactions from treating him as not "lawfully admitted for permanent residence." The immediate, serious problem that crops up, of course, is that it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be. <u>See</u> <u>Office of Pers. Mgmt. v. Richmond</u>, 496 U.S. 414, 422–23, 110 S. Ct. 2465, 2470 (1990) (noting that the Court has reversed every finding of estoppel against the government that it has reviewed); <u>but cf.</u> <u>Heckler v. Cmty. Health Servs. of Crawford</u>, 467 U.S. 51, 60–61, 104 S. Ct. 2218, 2224 (1984) (noting that there might be some cases in which "the public interest in ensuring that the Government can enforce the law free

20

from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government").

The Supreme Court has specifically declined to apply estoppel against the government in several cases in the immigration context. See INS v. Miranda, 459 U.S. 14, 17–18, 103 S. Ct. 281, 282–83 (1982) (petitioner was ordered deported because he was no longer eligible for permanent resident status after getting a divorce during the eighteen months the INS was holding his visa application); INS v. Hibi, 414 U.S. 5, 7–8, 94 S. Ct. 19, 21–22 (1973) (petitioner missed his opportunity for naturalization because the government failed to publicize the relaxed requirements which would have applied to him and did not place any representatives in his country to alert or help him with the process); Montana v. Kennedy, 366 U.S. 308, 314–15, 81 S. Ct. 1336, 1340–41 (1961) (petitioner was denied citizenship because of his foreign birth even though his mother had sought to return to the United States just before his birth and was erroneously informed that she could not legally return). Savoury's estoppel argument is no more compelling than the ones the Supreme Court rejected in those three cases.

Even if estoppel were available as a defense against the government, Savoury would still have to establish its traditional elements: "(1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to

21

the acts, conduct, or acquiescence; [and] (3) detrimental reliance." United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003). Additionally, we have said that if estoppel does lie against the government in the immigration context, the alien asserting it would have to show the government engaged in affirmative misconduct. Tefel v. Reno, 180 F.3d 1286, 1302–03 (11th Cir. 1999). "Affirmative misconduct requires more than governmental negligence or inaction," because a traditional claim of estoppel already requires at least negligence by the party being estopped. McCorkle, 321 F.3d at 1297. The higher burden of showing affirmative misconduct in order to estop the government would give effect to the Supreme Court's statements that, if the government may be estopped at all, it would take more of a showing than when the doctrine is applied against a private litigant. See Tefel, 180 F.3d at 1303 (citing Heckler, 467 U.S. at 60, 104 S. Ct. at 2224).

In Tovar-Alvarez v. U.S. Att'y Gen., 427 F.3d 1350, 1353–54 (11th Cir. 2005), we declined to hold the government estopped from removing the petitioner where there was no showing of affirmative misconduct by the government. The petitioner completed all application requirements for naturalization, but the INS had not finished processing his application almost two years later when he was convicted of a drug offense and charged with removability. Id. at 1351. Tovar-Alvarez argued that the INS should be estopped from treating him as an alien

22

because INS regulations required the Service to process his application within 120 days. Id. at 1353. We concluded that the "INS's delay in processing Tovar-Alvarez's petition for naturalization does not rise to the level of affirmative misconduct." Id. at 1354.

Savoury argues that the government engaged in affirmative misconduct in this case by attempting to remove him from the United States even after it had adjusted his status with knowledge of his conviction; had failed to raise the issue of his conviction in removing the conditional basis on his permanent residence; and had not raised it in his naturalization proceedings. He notes that the government did not institute removal proceedings against him for over ten years despite these and other opportunities to do so. Savoury argues that the law requires lawful permanent residents to reside in the United States, and this encourages people who are granted that status to establish roots in their communities and raise families here.

Savoury has not demonstrated anything beyond negligence, oversight, or laxness on the part of the INS. That is not enough. See, e.g., McCorkle, 321 F.3d at 1297. Nor has he shown detrimental reliance. As a result of the action about which he now complains Savoury was allowed to enjoy the status of permanent resident in this country for more than a decade, a status to which he was not entitled, and a status that is so non-detrimental to him that he would like to

23

continue enjoying it indefinitely. He has not been worse off but instead has been better off because the INS granted him permanent resident status in 1992 instead of removing him from this country as it should have. Instead of suffering a detriment, Savoury has enjoyed a windfall. He has not come close to showing what would be required if estoppel could be asserted against the government.

**D.**

Savoury's attempt to assert laches suffers from the same problems as his estoppel defense. Neither this Court nor the Supreme Court has ever indicated that laches applies against the government. Instead, the Supreme Court has stated that, "[a]s a general rule laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest." Hibi, 414 U.S. at 8, 94 S. Ct. at 21. We have gone even further, holding that laches "cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest." United States v. Arrow Transp. Co., 658 F.2d 392, 394 (5th Cir. Unit B 1981).[3] The INS does act in the public interest when it enforces the immigration laws of this country. Hibi, 414 U.S. at 8, 94 S. Ct. at 21. That is what happened in this case: after years of failing

---

[3]Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

to do so, the INS finally enforced the immigration laws against Savoury. Laches

cannot be asserted to prevent it from doing so.

**E.**

Savoury's final argument is that the government violated his due process

rights by denying him the opportunity to apply for relief from removal. To prevail

on this argument Savoury must show substantial prejudice. Ibrahim v. INS, 821

F.2d 1547, 1550 (11th Cir. 1987). In Ibrahim we held that the petitioner had not

demonstrated substantial prejudice because he had failed to show that the outcome

of his case would have been different if the requested procedures had been used.

Id. To the extent the injury Savoury alleges is procedural, he has not stated what

procedures should have been employed or how they would have resulted in a

different outcome.

Savoury relies on the Seventh Circuit's decision in Singh v. Reno, 182 F.3d

504, 507 (7th Cir. 1999), but the prejudice was clear in that case. The INS had

issued an order to show cause in 1992 but did not hold a hearing until 1996 despite

Singh's requests for one. Id. at 510. By the time of his hearing, relief under §

212(c) had been eliminated by statute. Id. The Court found that Singh had

presented a substantial constitutional claim and remanded to the IJ for a hearing.

Id. at 511. Unlike Singh, Savoury cannot show that he was prejudiced by the

INS's delay in acting to enforce the law. All he suffered was enjoyment of a substantial benefit to which he was not entitled. That is hardly prejudice.

## III.

The motion to DISMISS for lack of jurisdiction is **DENIED**, but the petition for review of the decision of the Board of Immigration Appeals is also **DENIED**.