# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2211

_____

Sungwook Kim,                    *
                                 *
           Petitioner,           *
                                 *   Petition for Review of
v.                               *   an Order of the Board
                                 *   of Immigration Appeals.
Eric H. Holder, Jr.,[1] United States   *
Attorney General,                *
                                 *
           Respondent.           *

_____

Submitted: December 11, 2008
Filed: March 26, 2009

_____

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE, District Judge.[2]

_____

BEAM, Circuit Judge.

Sungwook Kim petitions for review of the Board of Immigration Appeals' (BIA) decision to affirm an Immigration Judge's (IJ) order that Kim be removed from the United States pursuant to sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for Michael B. Mukasey as respondent.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

Immigration and Nationality Act (INA), 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I), and denying his request to cancel the removal proceedings under section 240A(a) of the INA, 8 U.S.C. § 1229b(a).  For the following reasons, we deny Kim's petition.

## I. BACKGROUND

Kim, a native citizen of South Korea, entered the United States on an F-1 student visa in 1988.  After college, Kim's employer helped him begin the process of obtaining permanent residency.  In 1992, Kim went to San Jose at his employer's direction to fill out the necessary paperwork for his Permanent Resident Card (green card).  Kim was told that the cost to obtain his card would be $10,000, of which he paid $2,000 while in San Jose–the remaining balance was withheld from his paychecks.  Later that same year, Kim received his green card.

For the next ten years, Kim lived and worked in St. Louis, Missouri, and once a year traveled to South Korea to visit family.  While attempting to reenter the United States following his most recent visit to South Korea in 2003, Kim was detained by Immigration and Naturalization Service (INS)[3] officers in Chicago for having an invalid green card.  Kim was released, but was later served with a Notice to Appear that, as amended, alleged he was subject to removal under INA sections 212(a)(6)(A)(i), 212(a)(6)(C)(i), and 212(a)(7)(A)(i)(I).

The controversy surrounding Kim's green card stems from the conviction of Leland Sustaire, the Supervisory District Adjudication Officer for the INS's San Jose office during the time Kim applied for and received his green card.  In 1998, Sustaire admitted to accepting bribes in exchange for issuing green cards.  The government

---

[3]In March 2003, the INS became a part of the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

alleged Kim's green card was fraudulently issued based on a "legally and factually baseless immigration record" that was created at the behest of Kim, or his agent, after the payment of a bribe to Sustaire. As a result, the government sought Kim's removal as an arriving alien without the proper documentation.

At Kim's hearing before the IJ, the government submitted several exhibits over Kim's objection to show Kim's green card was fraudulently issued. The government introduced: a form I-213 Record of Deportable/Inadmissible Alien; a list of alien numbers, prepared by Sustaire, representing those persons from whom Sustaire received bribes; and, from the bribery trials, the government's Motion for Downward Departure, a transcript of Sustaire's testimony, and a copy of the judgments. Further, Agent Lesley Brown testified regarding the bribery scheme, specifically noting that Kim was ineligible for a status adjustment at the time it was issued to him in 1992. Kim challenged the introduction of this evidence as irrelevant, without foundation, and as inadmissible hearsay.

The IJ found the evidence showed it was "unusual" that Kim would travel from St. Louis to San Jose to obtain his green card. Further, the IJ found Kim did not qualify for a green card at the time it was obtained. The IJ also found the amount Kim paid to obtain the green card and the quickness with which it was received were suspect. Finally, the list, sorted by alien number, prepared by Sustaire in his bribery trial showing the green cards issued for which he received a bribe, included Kim's alien number and corroborated the government's allegation. Thus, the IJ found by "clear and convincing evidence that . . . a legally and factually baseless immigration record . . . [was] improperly issued," and, as a result, Kim did not possess a valid green card, and was therefore removable.

The BIA, on Kim's appeal, agreed with the IJ. Kim's claim that the IJ erred in admitting the government's evidence was rejected by the BIA because hearsay is admissible when probative and fundamentally fair, and the government's evidence was

both. Additionally, the BIA found Kim was properly charged on inadmissibility grounds because he was not "an alien lawfully admitted for permanent residence at the time he attempted to return." The BIA also noted that 8 U.S.C. § 1256(a) did not prohibit the removal proceedings as time-barred because the five-year statute of limitations relied upon by Kim applied only to rescission of status adjustments, not removal. Kim was also found not eligible for cancellation of the removal proceedings by the BIA because cancellation only applies to lawful permanent residents, which Kim was not. Kim petitions this court for review alleging he was denied due process by the admission of the government's evidence, he was improperly treated as an arriving alien, and he qualified for cancellation of the removal proceedings.

## II.    DISCUSSION

"We review questions of law de novo and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Arellano-Garcia v. Gonzales, 429 F.3d 1183, 1185 (8th Cir. 2005).

### A.    Hearsay Evidence

Instead of challenging the sufficiency of the government's evidence establishing that Kim's green card was illegally issued, Kim alleges the evidence was inadmissible hearsay. The federal rules of evidence, however, do not apply in immigration proceedings. Solis v. Mukasey, 515 F.3d 832, 835-36 (8th Cir. 2008). Hearsay evidence is therefore admissible if it "'is probative and its admission is fundamentally fair.'" Id. at 836 (quoting Nyama v. Ashcroft, 357 F.3d 812, 816 (8th Cir. 2004)). The government's evidence is undoubtedly probative as it addresses the assertion that Kim was not eligible to receive his green card and received it from Sustaire only through bribery. While only one document directly links Kim to Sustaire, the remaining documents put the bribery scheme in context. Further, Agent Brown was active with

the Sustaire investigation, which involved about 340 immigration cases. Thus, Agent Brown's testimony on the matter is certainly probative.

In addition to being probative, evidence must be fundamentally fair to be admissible. The evidence in this case was either part of the public record of a trial, given under oath, or presumptively reliable as produced by public officials during the ordinary course of their duties. Instead of stating why this evidence is untrustworthy, Kim attempts to show a due process violation by arguing that hearsay evidence in general is inherently unreliable and that he must be able to cross-examine witnesses. However, this is not enough to show that admitting the evidence is fundamentally unfair because hearsay evidence is not per se inadmissible in immigration cases as violative of due process. Id. In each case Kim cites to the contrary, the hearsay evidence was inadmissible based on specific facts, not because hearsay is generally unreliable. Anim v. Mukasey, 535 F.3d 243, 257 (4th Cir. 2008) (declarants were foreign officials who had "powerful incentives to be less than candid"); Ezeagwuna v. Ashcroft, 325 F.3d 396, 406 (3d Cir. 2003) (multiple levels of hearsay and the first and second declarants were unknown); Murphy v. INS, 54 F.3d 605, 610-11 (9th Cir. 1995) (holding the I-213 form inadmissible as unreliable because alien disputed content and provided specific evidence to the contrary). In this case, Kim has provided no basis upon which to doubt the accuracy of the evidence in question beyond generalizations regarding the unreliability of hearsay evidence. Thus, the IJ did not err in admitting the evidence.

### B.    Kim's Status as an Arriving Alien and 8 U.S.C. § 1256(a)

We next address Kim's assertion that 8 U.S.C. § 1256(a) barred these removal proceedings. Kim states that if "the government believes that permanent residence status was improperly conferred, the immigration laws include a statutory procedure to rescind adjustment of status, under 8 U.S.C. § 1256(a)." Further, Kim argues that because that section includes a five-year statute of limitations, the government's action

is time-barred.  Kim asks us to adopt the Third Circuit's view[4] that this limitations period applies to removal proceedings, not just rescission of status adjustments, because otherwise "anyone the government believed was adjusted improperly would instantly be deprived of their status and subject to immediate removal."  We decline to do so.

Section 1256(a) states:

> If, at any time within five years after the status of a person has been otherwise adjusted . . . to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.  Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

8 U.S.C. § 1256(a).

On its face, § 1256(a) only discusses the five-year statute of limitations in terms of rescinding a status adjustment, and since 1962 the Attorney General has interpreted that section to only apply to the rescission of status adjustments, not removal proceedings.  Asika v. Ashcroft, 362 F.3d 264, 269 (4th Cir. 2004) (per curiam) (citing Matter of S–, 9 I. & N. Dec. 548, 548 (Att'y Gen. 1962)).  Supporting the Attorney General's interpretation, § 1256(a) was amended in 1996 to add the

---

[4]Garcia v. Attorney General, 553 F.3d 724 (3d Cir. 2009); Bamidele v. INS, 99 F.3d 557 (3d Cir. 1996).

following sentence, "[n]othing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien . . . and an order of removal issued by an [IJ] shall be sufficient to rescind the alien's status." 8 U.S.C. § 1256(a). This amendment makes clear that the legislature viewed rescission and removal as separate, and applied the five-year limitations period to rescission only. See also Garcia, 553 F.3d at 729-31 (Fuentes, J., dissenting) (noting the 1996 amendment "confirms that the five-year bar is meant to apply only to rescission proceedings" and "indicates that Congress does not view rescission and removal as equivalents"); Oloteo v. INS, 643 F.2d 679, 682-83 (9th Cir. 1981) (holding Congress "plainly, unequivocally and unambiguously" meant to apply the five-year limitations period to rescission only).

To the extent there is any doubt as to the plain meaning of the statute, we defer to the Attorney General's interpretation of the statute where such an interpretation is not unreasonable. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984); see also Asika, 362 F.3d at 269. As stated above, § 1256(a) does not limit removal to the five-year limitations period on its face, and the section "govern[ing] deportation refer[s] neither to [§ 1256(a)] nor the statute of limitations that it purportedly creates, nor, for that matter, to any time limitation on deportation at all." Asika, 362 F.3d at 269. Thus, it is not unreasonable for the Attorney General to interpret § 1256(a)'s five-year statute of limitations to apply to rescission only.

Having concluded that the government's action is not time-barred by § 1256(a), we turn to Kim's assertion that "he was found removable as an inadmissible arriving alien, without requiring the government to prove by clear, unequivocal, and convincing evidence that he was not a Permanent Resident." Relying on 8 U.S.C. § 1101(a)(13)(C) and 8 C.F.R. § 235.3(b)(5), Kim alleges he was denied the presumption that he was a returning United States resident, treated as an arriving alien, and therefore "stripped [] of the procedural protections afforded to U.S. residents." We disagree.

-7-

Section 1101(a)(13)(C) applies only to "[a]n alien *lawfully* admitted for permanent residence," and 8 C.F.R. § 235.3(b)(5) applies only to claims of "*lawful* permanent resident . . . status." 8 U.S.C. § 1101(a)(13)(C) (emphasis added); 8 C.F.R. § 235.3(b)(5) (emphasis added). Thus, Kim is only entitled to the presumption of being a returning United States resident and not an arriving alien if he was a lawful permanent resident. In addressing this issue, the IJ held by "clear and convincing evidence" that Kim "[was] not a lawful permanent resident of the United States." The IJ did so only after considering the government's evidence and stating "that the evidence is clear and convincing" that a "legally and factually baseless immigration record was fraudulently created for the purpose of improperly issuing [] a [green card]." Kim admits in his brief that "[h]e would [] be subject to removal only if the government could prove to the required standard that his status was not lawfully conferred." The IJ, however, did in fact find that the government proved to the required standard[5] that Kim's status was not lawfully conferred, and therefore did not err in treating Kim as an arriving alien.

Having correctly designated Kim an arriving alien, and not a returning resident, the IJ held Kim removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). These sections address "aliens who are inadmissible . . . and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). Section 1182(a)(6)(A)(i) declares an alien who is in the United States "without being admitted . . . is inadmissible." Further, § 1182(a)(7)(A)(i)(I) states an alien is inadmissible if he does not possess the proper documentation. In this case, Kim did not possess the

---

[5]In his brief and at oral argument Kim posits, citing <u>Berenyi v. INS</u>, that the required standard is "clear, *unequivocal*, and convincing evidence." 385 U.S. 630, 636-37 (1967) (emphasis added). This standard, however, applies only to the deportation of persons whose "citizenship [is] already acquired." <u>Id.</u> at 636. The "unequivocal" standard has not been used and does not apply when addressing the preliminary question of whether citizenship has been lawfully acquired in the first place.

proper documentation because his green card was not lawfully conferred and he was not lawfully admitted to be in the United States. Thus, the IJ did not err in holding Kim removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I).

## C.    Cancellation of Removal Proceedings

Finally, Kim claims to have established eligibility for cancellation of the removal proceedings under 8 U.S.C. § 1229b(a). Pursuant to § 1229b(a), the removal of an alien may be canceled if three conditions are met. First, the alien must have been "lawfully admitted for permanent residence for not less than 5 years." 8 U.S.C. § 1229b(a)(1). Second, the alien must have lived in the United States continuously for seven years after being admitted in any status. Id. § 1229b(a)(2). Finally, the alien must not have been convicted of an aggravated felony. Id. § 1229b(a)(3). The IJ determined that Kim did not qualify for cancellation because he was not lawfully admitted for permanent residence as his green card was fraudulently obtained. On appeal, however, Kim asserts the government failed to prove "that Kim lacked the qualifications for Permanent Resident status at the time he was approved."

Kim's assertion that the government failed to prove he would not qualify for Permanent Resident status confuses the issues. Section 1229b(a) asks whether the alien "*has been* . . . lawfully admitted for permanent residence," not whether the alien *could have been* lawfully admitted. Id. § 1229b(a)(1) (emphasis added). The IJ found, based on the government's evidence, that Kim's green card was obtained by fraud and that he, therefore, had not been lawfully admitted for the requisite five years and did not qualify for § 1229b(a) relief. See Arellano, 429 F.3d at 1187; In re Koloamatangi, 23 I & N Dec. 548, 550 (BIA 2003). Thus, Kim was not eligible for cancellation because he was not lawfully admitted for permanent residence.

Kim's attempt to differentiate Arellano and Koloamatangi on the grounds that the government has not shown he "lacked the qualifications" for the green card fails.

Neither <u>Arellano</u> nor <u>Koloamatangi</u> required a showing that the alien both procured his green card via fraud and did not otherwise qualify for the green card. Rather, when an alien obtains a green card via fraud, that alien is not lawfully admitted for permanent residence and is not entitled to relief under § 1229b(a), even if the alien would have otherwise qualified for the green card notwithstanding the fraud.

Nevertheless, the BIA specifically addressed this issue and found that Kim did not qualify for a green card when it was issued to him. As the BIA correctly noted, an alien seeking a status adjustment in 1992 was required, among other things, to present a labor certification and have a medical examination performed. 8 U.S.C. § 1182(a)(5) (1992); 8 C.F.R. §§ 212.8, 245.5 (1992). Kim, by his own admission, did not possess a labor certificate and did not have a medical examination performed. Thus, even though the government was not required to show Kim did not qualify for a green card notwithstanding the fraud, it is evident from the record that Kim did not, in fact, qualify.

## III.    CONCLUSION

For the foregoing reasons, we deny Kim's petition for review.

_____