[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10784
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-20543-CMA

EDWIN ROSETE REGANIT,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
DIRECTOR, US CITIZENSHIP AND IMMIGRATION SERVICES,
DISTRICT DIRECTOR OF THE UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICE MIAMI DISTRICT OFFICE,
Linda Swacina,
KENDALL FIELD OFFICE DIRECTOR, UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,
Andrew Davidson,
U.S. ATTORNEY GENERAL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 25, 2016)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Defendants, who are the Department of Homeland Security and related entities, denied Plaintiff Edwin Rosete Reganit's application for naturalization. Plaintiff sought review of this denial in district court, pursuant to 8 U.S.C. § 1421(c).[1] The district court granted summary judgment to Defendants. Plaintiff now appeals, arguing that the district court erred by characterizing him as an alien crewman, which thereby rendered him statutorily ineligible to become a United States citizen because it meant that he had not been lawfully admitted for permanent residence. After careful review, we affirm.

## I. BACKGROUND

### A.    Factual Background

The parties stipulated to the following facts. Plaintiff, a native and citizen of the Philippines, entered the United States on May 27, 2001, with a C-1/D[2] visa to work on board a ship owned by Discovery Cruise Lines. Plaintiff worked as a

---

[1] Section 1421(c) of Title 8 of the United States Code states that, "A person whose application for naturalization . . . is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c).

[2] A C-1/D visa is a dual visa. A "C-1" visa is given to a nonimmigrant alien who is in "immediate and continuous transit through the United States." 8 U.S.C. § 1101(a)(15)(C). A "D" visa is given to a nonimmigrant alien serving aboard a vessel or aircraft "who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft." *Id.* § 1101(a)(15)(D)(i); *see also Matter of G-D-M-*, 25 I. & N. Dec. 82, 83 (BIA 2009).

2

butcher on the ship for approximately two weeks before becoming ill. Approximately one more week passed, and because Plaintiff was still sick, Discovery Cruise Lines began the process of arranging for him to de-board the ship to receive medical assistance in the United States.  On June 29, 2001, Plaintiff was granted a temporary medical parole into the United States, valid only until July 28, 2001, pursuant to 8 U.S.C. § 1182(d)(5).

When Plaintiff de-boarded the ship, employees of Discovery Cruise Lines escorted him to a doctor in Miami and remained with him at a hotel until he returned to the ship.  After returning to the ship, Plaintiff worked for approximately one more week.  However, because he was still ill, Discovery Cruise Lines once again arranged for him to see a doctor in Miami.  But while in Miami, Plaintiff resigned from his position on the ship and Discovery Cruise Lines then arranged his travel back to the Philippines.

Plaintiff, however, did not return to the Philippines, as he should have done. Instead, he remained in the United States, and later he married his current wife, Aileen, in 2002.  In 2005, Aileen filed an I-130 petition for alien relative on behalf of Plaintiff and Plaintiff filed an I-485 application for adjustment of status to that of a lawful permanent resident based on his marriage to a United States citizen. On his adjustment of status application, Plaintiff stated that his last entry into the United States was on May 27, 2001, and that his status upon entering was C-1.

3

On June 13, 2006, United States Citizenship and Immigration Services ("CIS") granted Plaintiff's application and his status was adjusted to that of a lawful permanent resident. Upon becoming a lawful permanent resident, Plaintiff traveled outside of the United States multiple times between 2007 and 2012. He showed his lawful permanent resident card to immigration authorities each time he re-entered the United States.

On March 4, 2011, Plaintiff applied to become a United States citizen. Discovering that Plaintiff had been admitted to the United States as a crewman, CIS determined that its approval of his adjustment of status application in 2005 had been in error and that, as a result, Plaintiff was not statutorily eligible to adjust status to that of a lawful permanent resident. Stated another way, because Plaintiff could not show that he had been lawfully admitted for permanent residence, he did not meet all of the requirements necessary to become a naturalized citizen. Accordingly, CIS denied his application for citizenship and after Plaintiff appealed, it affirmed its denial of Plaintiff's application.

## B.    Procedural History

In February 2014, Plaintiff filed this action pursuant to 8 U.S.C. § 1421(c) against the Secretary of the Department of Homeland Security; the Acting Director of the CIS; the District Director of the Miami District of CIS; the Director of the Kendall Field Office of CIS; and the Attorney General of the United States, in their

4

official capacities.  In his amended complaint, Plaintiff alleged that Defendants violated his rights under the Immigration and Nationality Act ("INA") and the Administrative Procedures Act by denying his application for naturalization.

Plaintiff later moved for summary judgment.  He argued that notwithstanding his initial entry into the United States as only a crewman, he was eligible for adjustment of status based on his temporary medical parole into the United States on June 29, 2001.  From that premise, he further contended that he was thereafter properly granted lawful permanent resident status, meaning that he met this requirement for becoming a United States citizen.[3]  Defendants also moved for summary judgment, arguing that Plaintiff's admission to the United States on a crewmen visa precluded any adjustment of status to that of a lawful permanent resident, thereby rendering him statutorily ineligible for naturalization.

The district court granted summary judgment in favor of Defendants.  The district court concluded that the plain language of 8 U.S.C. § 1255(c), which bars alien crewmen from adjusting status, in conjunction with the federal regulation governing the parole of alien crewmen, 8 C.F.R. § 253.1, mean that Plaintiff's temporary medical parole did not alter his status as a crewman.  Because Plaintiff could not establish that he was lawfully admitted for permanent residence based on

---

[3]  Alternatively, Plaintiff also argued that even if he was not lawfully admitted for permanent residence based on his medical parole, he was subsequently admitted for permanent residence when he later traveled outside of the United State and gained re-entry as a lawful permanent resident.  The district court rejected this argument, and Plaintiff does not challenge this ruling on appeal.

this medical parole, he failed to meet the statutory requirements for naturalization. This appeal followed.

## II.  DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment *de novo*.  *United States v. Jean-Baptiste*, 395 F.3d 1190, 1192 (11th Cir. 2005).  The burden is on the party moving for summary judgment to establish that no genuine issue of material fact exists.  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 341–42 (11th Cir. 2012).  We view all evidence and draw all reasonable inferences in favor of the non-moving party.  *Id.*

### B.    Applicable Law

"American citizenship is a precious right."  *Costello v. United States*, 365 U.S. 265, 269 (1961).  An individual who seeks to obtain naturalized United States citizenship must comply with the statutory requirements for naturalization.  *See Fedorenko v. United States*, 449 U.S. 490, 505–06 (1981).  These requirements require, among other things, that the alien show he was lawfully admitted for permanent residence in the United States.  8 U.S.C. § 1427(a).

The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws."  8

6

U.S.C. § 1101(a)(20).  To be "lawfully admitted for permanent residence," an alien's adjustment to lawful permanent resident status must be "in compliance with the substantive requirements of the law."  *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1313–18 (11th Cir. 2006).  For that reason, we have held that an alien whose status was mistakenly adjusted to that of a lawful permanent resident was not an alien lawfully admitted for that purpose.  *See id.* (concluding that an alien was not eligible for a waiver of inadmissibility based on a mistaken adjustment of status done in violation of the substantive requirements of the law).

In order for an alien to adjust status to that of a lawful permanent resident, the alien must:  (1) have been "inspected and admitted or paroled into the United States"; (2) apply for adjustment of status; (3) be eligible to receive an immigrant visa and be admissible to the United States; and (4) have an immigrant visa immediately available to him at the time of filing.  8 U.S.C. § 1255(a).

Alien crewmen, however, are explicitly barred from adjusting to lawful permanent resident status.  *Id*. § 1255(c).  An alien crewman is defined as "a person serving in any capacity on board a vessel or aircraft."  *Id.* § 1101(a)(10).  Moreover, the definition of immigrant excludes "an alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . who intends to land temporarily and solely in pursuit of his calling as a crewman."  *Id.* § 1101(a)(15)(D)(i).

7

The INA provides that the Attorney General may, in his discretion and on a case-by-case basis, parole an alien into the United States temporarily for humanitarian reasons or significant public benefit.  8 U.S.C. § 1182(d)(5)(A).

### C.    Plaintiff was not Statutorily Eligible for Naturalization

In order for Plaintiff to have been statutorily eligible for naturalization, he must show that he was lawfully admitted for permanent residence.  *See* 8 U.S.C. § 1427(a).  But alien crewmen are barred from adjusting to lawful permanent resident status.  8 U.S.C. §§ 1101(a)(20), 1255(c); *see also Savoury*, 449 F.3d at 1313–18.  And there is no dispute that Plaintiff was an alien crewman on board a cruise ship who was issued only a crewmen visa for purposes of entry into this country.  There is also no dispute that after his arrival, Plaintiff was granted a temporary medical parole into the United States under § 1182(d)(5) to obtain treatment for an illness that had arisen while he was working on the ship.  Consequently, this case turns on a matter of first impression in our Court:  whether Plaintiff's grant of medical parole under § 1182(d)(5) altered his crewman status.  We conclude that it did not.

We first address Plaintiff's argument that he shed his "alien crewman" status under the INA once he became ill on board the ship and was allowed to temporarily de-board for purposes of receiving medical treatment.  Plaintiff concedes that his initial entry in May 2001 was as a crewman, but he contends that

8

by de-boarding temporarily in June 2001 to receive medical treatment, he ceased "pursuit of his calling as a seaman." Yet, in determining whether an alien should be classified as a crewman, we have stated that "the focal issue is whether [the alien] entered the United States in pursuit of his calling as a seaman." *Parzagonis v. I.N.S.*, 747 F.2d 1389, 1390 (11th Cir. 1984). The Board of Immigration Appeals ("BIA") has further explained that it "examine[s] an alien's visa and the circumstances surrounding his entry into the United States to determine if he entered as a crewman." *Matter of G-D-M-*, 25 I. & N. Dec. 82, 85 (BIA 2009).

For the sake of this discussion, we will assume that a non-crewman alien who was medically paroled into the United States under § 1182(d)(5)(A) might later be eligible to adjust status. But the applicable statutes and regulations do not permit an alien crewman to bypass the statutory bar on his adjustment of status merely by the fortuity of a subsequent medical parole to treat an illness arising while serving as a crew member. Section 253.1(e) of Title 8 of the Code of Federal Regulations governs the parole of alien crewmen. That provision states that an alien crewman without a conditional landing permit and in need of medical treatment or observation may be paroled into the United States pursuant to § 1182(d)(5). 8 C.F.R. § 253.1(e). But an alien granted such parole is to remain in the custody of the agent of the vessel, and the vessel is to cover the expenses of the medical treatment. *Id.*

9

Reading this regulation together with § 1255(c)—which clearly bars alien crewmen from adjusting to lawful permanent resident status—we conclude that an alien crewman granted medical parole pursuant to 8 C.F.R. § 253.1(e) does not cease being a crewman and thereby rid himself of the statutory bar on adjustment of status. *See* 8 U.S.C. § 1255(c); 8 C.F.R. § 253.1(e). In fact, the BIA has stated that Congress intended "to bar all occupational seamen . . . who have relatively easy access to the United States [and] have used the seaman route to enter the United States for permanent residence." *Matter of Goncalves*, 10 I. & N. Dec. 277, 279 (BIA 1963). Nothing in the applicable statutes imply that an alien crewman who has been admitted as such, but who subsequently receives a medical parole while working on board a ship, thereby becomes eligible for adjustment of status.

Indeed, in the present case, it is clear that Plaintiff's medical parole was obtained in pursuit of his calling as a seaman. *See Parzagonis*, 747 F.2d at 1390; *Matter of G-D-M-*, 25 I. & N. Dec. at 85. Having received only a crewmen visa, Plaintiff fell ill while working on board the Discovery Cruise Lines ship. Consistent with the federal regulation governing the parole of alien crewmen, Discovery Cruise Lines arranged for Plaintiff's medical parole and his subsequent doctor's visits, and stayed with him at a hotel in Miami. *See* 8 C.F.R. § 253.1(e). Notably, Plaintiff did in fact return to the ship after his first doctor's visit. And once he decided to quit his position as a crewman, Discovery Cruise Lines

10

arranged for Plaintiff's travel home to the Philippines.  In short, Plaintiff's visa and the circumstances surrounding his entry into the United States establish that he was a crewman throughout the applicable period of time.

Plaintiff also argues that the district court erroneously interpreted 8 C.F.R. § 253.1(e) to mean that an alien paroled into the United States will remain an alien crewman forever.  The district court, however, did not make such a pronouncement.  Instead, it considered all of the circumstances surrounding Plaintiff's entry in 2001 in reaching its conclusion that his entry was in pursuit of his calling as a seaman.[4]  *See Matter of G-D-M-*, 25 I. & N. Dec. at 85.

We are also not persuaded by Plaintiff's argument that the policy reasons for barring alien crewmen from adjustment of status ceased to exist once he was allowed to seek temporary medical care while serving on board the ship.  Given their "relatively easy access to the United States," alien crewmen who have been admitted for the limited purpose of pursuing their occupation are prohibited from taking advantage of this access to later adjust status.  *See Matter of Goncalves*, 10 I. & N. Dec. at 279; 8 C.F.R. § 253.1(e).  Again, Plaintiff was able to obtain a temporary medical parole, which expired on July 28, 2001, only because he had first been granted entry as an alien crewman.

---

[4] The BIA has determined that an occupational crewman is not barred from adjustment of status if the alien's most recent admission into the United States was not in pursuit of his calling as a seaman.  *See Matter of Rebelo*, 13 I. & N. Dec. 84, 85–86 (BIA 1968) (concluding that an alien was not barred from adjustment of status because, although he was occupationally a crewman, his most recent entry into the United States was as a visitor for pleasure).

In summary, because Plaintiff was a crewman when he entered this country, he cannot establish that he was lawfully admitted for permanent residence. *See* 8 U.S.C. §§ 1101(a)(20), 1255(c). As a result, Plaintiff does not meet the statutory requirements for naturalization. *See* 8 U.S.C. § 1427(a). Accordingly, the district court did not err by granting summary judgment in favor of the Defendants.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.