[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15160
Non-Argument Calendar
_____

Agency No. A095-163-516

MOHAMMED S. SHAIKH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 23, 2017)

Before HULL, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Mohammed Shaikh, proceeding pro se, seeks review of the Board of Immigration Appeals's ("BIA") order adopting and affirming the immigration judge's ("IJ") decision: (1) finding that Shaikh was removable because he violated a no-contact provision of a domestic violence protection order; and (2) denying Shaikh's request for cancellation of removal.  After review, we deny the petition.

## I.  BACKGROUND FACTS

### A.    VSG's I-140 Visa Petition on Behalf of Shaikh

In April 1999, Shaikh, a native and citizen of India, entered the United States as a nonimmigrant worker on an H-1B visa.  On August 29, 2000, Vision Systems Group, Inc. ("VSG"), a New Jersey computer consulting and software development company, filed with the Department of Labor an application for a labor certification on Shaihk's behalf.  The labor certification was for Shaikh to work for VSG on an H-1B visa as a "Programmer Analyst."  On December 20, 2000, the Department of Labor approved the labor certification.  Thereafter, on January 29, 2001, VSG filed an I-140 immigrant petition for alien worker with the former Immigration and Naturalization Service ("INS") on behalf of Shaikh.[1]

On April 18, 2001, while the I-140 petition was still pending, Shaikh resigned from VSG to work for another company, Worldres.  Shaikh worked for

---

[1]In March 2003, the functions of the former INS were transferred from the Department of Justice to the newly formed Department of Homeland Security, which includes the United States Citizenship and Immigration Services ("USCIS"), the agency that now handles visa petitions. See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

Worldres in California as a system administrator for only three weeks before being

terminated.  Then, in July or August 2001, Shaikh worked for only four to six

weeks as a database administrator for Seisint, Inc., another company in Boca

Raton, Florida.

Despite Shaikh's having left VSG, in June 2001, VSG petitioned the INS to

extend Shaikh's H-1B visa, which was due to expire in August 2001.  In the

petition, VSG stated its intention to "continuously employ" Shaikh and that Shaikh

had worked for the company as a programmer analyst from "7/99 – present."  The

INS granted the request and extended Shaikh's H-1B visa to May 16, 2004.[2]

During this period, VSG also marketed Shaikh to some of its clients as one of its

own employees.

On August 2, 2001, the INS approved the I-140 petition on behalf of Shaikh,

with a priority date of August 29, 2000.

## B.    Shaikh's Application for Adjustment of Status

---

[2]In 2003 administrative proceedings before the Department of Labor, Shaikh sought unpaid wages from VSG for the period between April 19, 2001 and August 26, 2002.  Shaikh testified before an ALJ that he had continued to work remotely for VSG while also working for Worldres and Seisint.  VSG's chief executive officer, Visaw Mandalapu, testified that Shaikh did not work for VSG after he resigned on April 18, 2001, and that Mandalapu agreed to seek an extension of Shaikh's H-1B visa in June 2001 only "for backup reasons" as a favor to Shaikh, who was looking for employment.  The ALJ credited Mandalapu's testimony over Shaikh's testimony, found that Shaikh's employment with VSG ended on April 18, 2001, and denied Shaikh's claim.  On appeal, the Administrative Review Board dismissed Shaikh's complaint with prejudice.

On August 17, 2001, Shaikh filed a Form I-485 with the INS seeking to adjust his status to that of a lawful permanent resident based on VSG's approved I-140 petition.  As part of his application, Shaikh indicated that he had worked for VSG from July 1999 to the "present time," and he did not include his work at either Worldres or other companies after April 18, 2001.

## C.    VSG's Letters to INS Withdrawing the I-140 Visa Petition

Between November 2001 and November 2002, VSG sent a series of letters to the INS stating it wished to withdraw the I-140 petition on behalf of Shaikh because he no longer worked for the company.  The first letter, dated November 29, 2001, stated that Shaikh "with H1B status is no longer working with our company."  VSG stated that it wished "to withdraw our petition with immediate effect," and asked the INS to cancel Shaikh's H1B status "originally issued under Vision Systems Group, Inc."  The second letter, dated April 22, 2002, was stamped received by the INS on July 29, 2002, and repeated VSG's "wish to withdraw Mr. Mohammed S. Shaikh, I-140 petition that has been applied with immediate affect [sic]."  On July 24, 2002, VSG also sent to the INS a letter seeking a "substitution of beneficiary" for the I-140 petition that had previously been approved on behalf of Shaikh and replacing Shaikh with another alien worker "equally qualified for the position."

4

On August 26, 2002, the INS approved Shaikh's I-485 petition, and his status was adjusted to lawful permanent resident.

On September 26, 2002, VSG sent another letter to the INS explaining that it had sent the April 22, 2002 letter withdrawing Shaikh's I-140 petition before it was approved, and enclosed a copy of the letter and the FedEx receipt.  VSG advised that Shaikh "left our employment in April, 2001 by transferring his H1B work visa to another firm," and pointed out that, although VSG had withdrawn its petition on Shaikh's behalf, the "INS had still granted permanent residency on 8/20/02 to Mr. Shaikh."  VSG reiterated that it would not be employing Shaikh and asked the INS to review the matter "and take immediate steps and not grant permanent residency status on behalf of our company, Vision Systems Group, Inc."  On November 5, 2002, VSG sent a final letter to the INS noting that Shaikh's "H1B has yet to be cancelled."[3]  On February 14, 2003, the INS notified VSG that the approval of VSG's June 2001 H-1B extension on behalf of Shaikh was automatically revoked.

## D.    Shaikh's Conviction for Violating a Domestic Violence Protection Order

On December 21, 2006, a Florida state court granted a petition by Shaikh's then-wife, Farasha Shaikh, and entered a final judgment of injunction for protection against domestic violence.  The injunction provided, among other

---

[3]In addition, between February and November 2003, VSG's attorney also sent four letters to the agency outlining the facts and requesting that the I-140 petition be revoked so that the substitute employee could use the approved petition.

5

things, that Shaikh "shall have no contact with" Farasha Shaikh, directly or indirectly, in person, by mail, e-mail, fax, telephone, through another person, or in any other manner.

In April 2007, Shaikh was charged in Florida state court with aggravated stalking after an injunction and seven counts of violating a domestic violence injunction. On October 29, 2007, Shaikh, with counsel present, pled nolo contendere to Count 2, which charged that on January 6, 2007, Shaikh willfully violated "the provisions of an injunction for protection against domestic violence, or the provisions of a foreign protection order, by telephoning, contacting, or otherwise communicating with the Petitioner directly or indirectly," in violation of Florida Statute § 741.31(4)(A)(5). The remaining charges were nolle prossed. Adjudication was withheld, and Shaikh was placed on twelve months' probation.[4]

## E.    Removal Proceedings

Shortly thereafter, the Department of Homeland Security ("DHS") initiated removal proceedings against Shaikh, charging that he was removable on two grounds: (1) for willfully and materially misrepresenting his employment status on his adjustment of status application, pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A); and (2) for having been

---

[4]In state post-conviction proceedings, Shaikh's conviction was initially vacated, but then reinstated on appeal. See State v. Shaikh, 65 So. 3d 539 (Fla. 5th Dist. Ct. App. 2011).

convicted of violating a protective order against domestic violence, pursuant to INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii).

Over the course of several removal hearings, Shaikh disputed many things but notably did not dispute that he had entered a nolo plea to violating the state court no-contact injunction. Instead, Shaikh argued that the circumstances of his violation—emailing his wife about legal matters during their pro se divorce proceedings and briefly encountering his wife at their son's school—had not involved any violence or threat of violence and thus was not conduct qualifying him for removal under INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii).

Ultimately, the IJ sustained the second ground for removability, but not the first ground. As to the first ground, the IJ concluded that the DHS had failed to carry its burden to show that Shaikh had willfully misrepresented his employment status when he applied for adjustment of status. As to the second ground, however, the DHS had shown that Shaikh violated the domestic violence no-contact injunction. The IJ cited the Florida state court documents reflecting Shaikh's nolo contendere plea to violating the injunction by communicating with his wife.

Shaikh then filed an application for cancellation of removal, pursuant to INA § 240A(a), 8 U.S.C. § 1229b(a). In 2012, the IJ granted the application.

**F.     DHS Appeal and BIA Remand**

7

The DHS appealed to the BIA, which affirmed the IJ's finding that Shaikh was removable for having violated the domestic violence protection order. The BIA rejected the DHS's argument that Shaikh was ineligible for cancellation of removal because he committed fraud on his application of adjustment of status. The BIA concluded that it could "discern no clear error in [the IJ's] finding that [Shaikh's] claim of employment with VSG was not deliberately fabricated."

The BIA nonetheless vacated the IJ's grant of cancellation of removal based on the DHS's alternative argument that Shaikh was ineligible for cancellation of removal because VSG had formally withdrawn the I-140 visa petition, resulting in an automatic revocation under 8 C.F.R. § 205.1(a)(3)(iii)(C). The BIA concluded that, because no fact findings were made as to whether the regulatory conditions were satisfied to revoke a visa petition, a remand to the IJ was necessary. The BIA noted the "obvious relevance" of VSG letters to the INS withdrawing the I-140 petition, but stated that it "express[ed] no present opinion regarding the appropriate evidentiary weight to which these documents are entitled." The BIA "remand[ed] the matter to the Immigration Judge on an open record for further proceedings in this regard."

### G.    IJ's Denial of Shaikh's Request for Cancellation of Removal

Upon remand, the parties declined to present additional evidence, agreeing the record was sufficient for the IJ to make a determination. The IJ issued a

8

written decision concluding that Shaikh had not met his burden to show that he was eligible for cancellation of removal. Citing to VSG's letters to the former INS withdrawing the I-140 petition, the IJ found that a reasonable inference could be drawn from the record that the I-140 petition was automatically revoked. Because Shaikh had not shown that he had an immediately available immigrant visa when he applied for adjustment of status, he also had not shown that he was lawfully admitted for permanent residence.

**H.    Shaikh's Appeal to the BIA**

This time, Shaikh appealed to the BIA. Shaikh argued, among other things, that: (1) he was not removable due to his violation of the domestic violence injunction; and (2) VSG's I-140 visa petition was not automatically revoked because Shaikh had successfully ported the petition pursuant to INA § 204(j), 8 U.S.C. § 1154(j).

The BIA adopted and affirmed the IJ's decision. The BIA concluded that Shaikh's challenge to his removability was barred by the law of the case doctrine because the BIA had already affirmed that determination in the DHS's 2014 appeal.

As to cancellation of removal, the BIA concluded that the IJ had not clearly erred in his findings of fact, including the finding that the record indicated that the I-140 visa petition was automatically revoked as of the day of its original approval.

9

Thus, the BIA concluded that Shaikh was not in possession of an immediately available immigrant visa when he applied to adjust his status. And, because he was not lawfully admitted for permanent residency, he was ineligible for cancellation of removal. Finally, the BIA noted that to the extent Shaikh raised potential improprieties surrounding the revocation of his visa petition, those matters were outside of the scope of the removal proceedings and needed to be raised before the director of the United States Citizenship and Immigration Service ("USCIS"), which issues and revokes visa petitions.

## II. DISCUSSION

### A.    Shaikh's Removability

When the IJ found in June 2010 that Shaikh was removable for violating the no-contact provision of the domestic violence injunction, Shaikh did not appeal the IJ's order. Instead, the DHS appealed the IJ's order, and the BIA affirmed the IJ's finding that Shaikh was removable, but vacated the IJ's order granting Shaikh cancellation of that removal. The BIA's remand was for the limited purpose of determining whether Shaikh was ineligible for cancellation of removal by virtue of VSG's undisputed withdrawal of the I-40 petition. Only after Shaikh lost on this remand issue and the IJ concluded that he was not eligible for cancellation of removal did Shaikh challenge the IJ's 2010 finding that he was removable. The BIA concluded Shaikh's challenge came too late and that the doctrine of the law of

10

the case foreclosed it from reconsidering the removability issue in Shaikh's subsequent BIA appeal.

Importantly, although Shaikh's petition for review argues on the merits that he is not removable, it does not challenge the BIA's application of the law of the case doctrine. Because Shaikh has abandoned this threshold legal issue, we have no cause to address the merits of the IJ's finding of removability. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (explaining that when an appellant fails to challenge one of the independent grounds supporting the judgment, he is deemed to have abandoned any challenge to that ground, and the judgment must be affirmed).

Even if we were to reach the merits, however, we would conclude that substantial evidence supports the IJ's finding, affirmed by the BIA, that Shaikh was removable.[5] The record shows—and Shaikh does not dispute—that in December 2006, Shaikh was under a domestic violence injunction and that in October 2007, he pled nolo contendere to violating the no-contact provision of that injunction. It is immaterial that the circumstances of Shaikh's violation of the protection injunction did not involve an act or threat of violence; he was nonetheless removable under INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii),

---

[5]We review findings of fact, including findings of removability, using the substantial evidence test. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004). Under that test, we draw every reasonable inference from the evidence in favor of the agency's decision and reverse a finding of fact only if the record compels it. Id. at 1027.

for violating the no-contact provision of that injunction.  See INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii) (providing that an alien is removable from the United States if a court determines he has "violate[d] the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued"); In re Strydom, 25 I. & N. Dec.507, 510 (BIA 2011) (explaining that the no-contact provision in a protection order exists to prevent the victim from being victimized again, and violating a no-contact provision by attempting to call a spouse's home rendered an alien removable under INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii)).  The state court documents constitute substantial evidence supporting the finding that Shaikh was removable under INA § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii).

## B.    Cancellation of Removal

The IJ and the BIA concluded that Shaikh was statutorily ineligible for cancellation of removal because he was not "lawfully admitted for permanent residence."  More specifically, the IJ concluded, and the BIA agreed, that because VSG automatically revoked its I-140 petition before Shaikh's application of adjustment of status was granted, he was not "lawfully admitted."  We agree.[6]

---

[6]While we lack jurisdiction to review the decision to grant or deny a request for cancellation of removal under INA § 240A, 8 U.S.C. § 1229b, we nonetheless retain jurisdiction to consider constitutional claims and questions of law.  See INA § 242(a)(2)(B)(i), (a)(2)(D) 8

12

Under INA § 240A, 8 U.S.C. § 1229b, the Attorney General may cancel removal of an alien who is a permanent resident. INA § 240A(a), 8 U.S.C. § 1229b(a). Once the government proves that an alien is removable, the alien bears the burden to show he is eligible for, and merits, such discretionary relief. INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A).

An alien who is a permanent resident is eligible for cancellation of removal if the alien: "(1) has been lawfully admitted for permanent residence for not less than five years, (2) has resided in the United States continuously for [seven] years after having been admitted in any status, and (3) has not been convicted of an aggravated felony." INA § 240A(a)(1)-(3), 8 U.S.C. § 1229b(a)(1)-(3) (emphasis added). "Lawfully admitted for permanent residence" is defined in the INA as "having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." INA § 101(a)(20), 8 U.S.C. § 1101(a)(20). "'Lawfully admitted' means more than admitted in a procedurally regular fashion[;] it means more than that the right forms were stamped in the right places." Savoury v. U.S.

---

U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D); Jimenez-Galicia v. U.S. Att'y Gen., 690 F.3d 1207, 1209 & n.3, 1210-11 (11th Cir. 2012). Whether an alien was "lawfully admitted for permanent residence" within the meaning of § 1229b(a)(1) is a question of law we review de novo. See Bedoya-Melendez v. U.S. Att'y Gen., 680 F.3d 1321, 1324-25 (11th Cir. 2012); Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006) (concluding that the BIA's interpretation of "lawfully admitted for permanent residence" in the INA raises a question of law, which this Court has jurisdiction to review under INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D)). Where, as here, the BIA adopts and affirms the IJ's conclusion, we review both the IJ's and the BIA's decisions. See Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011).

Att'y Gen., 449 F.3d 1307, 1317 (11th Cir. 2006).  An alien is not lawfully admitted for permanent residence if his status was "mistakenly adjusted to that of a lawful permanent resident."  Reganit v. Sec'y, Dep't of Homeland Sec., 814 F.3d 1253, 1257 (11th Cir. 2016).

One way an alien can be lawfully admitted for permanent residence is by entering the United States as an immigrant worker and then adjusting his status. This path to lawful permanent residence is a three-step process.  Kurapati v. U.S. Bureau of Citizenship & Immigration Servs., 775 F.3d 1255, 1258 (11th Cir. 2014).  During the first two steps, the alien's prospective U.S. employer files (1) an application for a labor certification with the Department of Labor ("DOL"); and (2) a Form I-140 immigrant worker visa petition with the USCIS.  Id.  If the I-140 petition is approved, then, at the third step, the alien files (3) a Form I-485 application for adjustment of status.  Id.  A worker may not file his I-485 application until a visa is immediately available, which is determined by the priority date on the alien's approved I-140 petition.  INA §§ 203(e)(1), 245(a)(3), 8 U.S.C. §§ 1153(e)(1), 1255(a)(3); 8 C.F.R. §§  204.5(d), 245.2(a)(2).

The Attorney General has discretion to adjust an alien's status to lawful permanent resident if: (1) the alien applies for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to the

14

<u>alien at the time the application is filed</u>.  INA § 245(a), 8 U.S.C. § 1255(a)

(emphasis added).  The burden is on the alien to show that he is eligible for

adjustment of status.  <u>Id.</u> § 240(c)(2)(A), (4)(A)(i), 8 U.S.C. § 1229a(c)(2)(A),

(4)(a)(i); <u>id.</u> § 245(a), 8 U.S.C. § 1255(a).

However, an approved I-140 petition on behalf of alien worker can be

automatically revoked upon the petitioner-employer's written notification.  <u>See</u> 8

C.F.R. § 205.1(a)(3)(iii)(C).  Revocation occurs "[u]pon written notice of

withdrawal filed by the petitioner . . . with any officer of the [USCIS] who is

authorized to grant or deny petitions," so long as that written notice happens

"before the decision on [the alien's] adjustment application becomes final."  8

C.F.R. § 205.1(a)(3)(iii)(C) (2016).  Further, if these conditions are met, the I-140

petition is deemed "revoked as of the date of approval."  <u>Id.</u> § 205.1(a).

Here the IJ and the BIA correctly concluded that Shaikh was ineligible for

cancellation of removal because he could not show he had been "lawfully admitted

for permanent residence" as that term is defined in the INA.  This is so because

VSG automatically revoked the I-140 visa petition it had filed on Shaikh's behalf

before Shaikh's I-485 application for adjustment of status was approved on August

26, 2002.[7]

---

[7]The IJ and the BIA also correctly concluded that the IJ's jurisdiction was limited to determining whether the I-140 petition had been automatically revoked or remained valid because Shaikh had met the portability requirements of INA § 204(j), 8 U.S.C. § 1154(j).  <u>See</u>

According to the record, VSG sent at least five letters notifying the former INS in writing that it was withdrawing the I-140 petition filed on behalf of Shaikh because Shaikh no longer worked for the company.  At least one of these letters, dated April 22, 2002, was stamped received by the INS on July 29, 2002, almost a month before Shaikh's application for adjustment of status was approved on August 26, 2002.  Because the I-140 petition was automatically revoked as of August 2, 2001 (the date it was originally approved), Shaikh did not have an immigrant visa immediately available to him on August 17, 2001, when he filed his I-485 application for adjustment of status.  In other words, Shaikh's adjustment of status on August 26, 2002, was the result of a mistake by the former INS and thus he was never "lawfully admitted for permanent residence" within the meaning of the INA.  See INA § 101(a)(20), 8 U.S.C. § 1101(a)(20); Reganit, 814 F.3d at 1257; Savoury, 449 F.3d at 1317.

Shaikh argues that despite VSG's withdrawing support for the I-140 petition, that 2001 petition remained valid because he ported the petition to another employer pursuant to INA § 204(j), 8 U.S.C. § 1154(j).  Under § 204(j), 8 U.S.C.

---

Sung v. Keisler, 505 F.3d 372, 375-77 (5th Cir. 2007); Matovski v. Gonzales, 492 F.3d 722, 732-37 (6th Cir. 2007); Perez-Vargas v. Gonzales, 478 F.3d 191, 194-95 (4th Cir. 2007); In re Neto, 25 I. & N. Dec. 169, 170 (BIA 2010).  While an IJ conducting removal proceedings has jurisdiction to rule on adjustment of status and cancellation of removal, see 8 C.F.R. §§ 245.2(a)(2)(i), (a)(5)(ii), 1240.1(a), an IJ cannot approve or deny employment-based visa petitions, which are within the jurisdiction of the USCIS, see 8 C.F.R. § 204.5.  Thus, the IJ could not address Shaikh's arguments that the USCIS's revocation of his petition was based on VSG's fraud.

16

§ 1154(j), an employment-based petition "for an individual whose application for adjustment of status . . . has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed."  INA § 204(j), 8 U.S.C. § 1154(j); see also 8 C.F.R. § 205.1(a)(3)(iii)(C) (2017).[8]  The portability provision in § 204(j), 8 U.S.C. § 1154(j), was added to the INA in 2000 by section 106(c) of the American Competitiveness in the Twenty-First Century Act ("AC21").  See Pub. L. No. 106-313, 114 Stat. 1251 (Oct. 17, 2000).  "Under the AC21, a worker no longer has to remain with his sponsoring employer until his I-485 application is approved.  In effect, the worker's new employer can use the previous employer's labor certification and I-140 petition to hire the worker (who is said to then 'port' to the new employer), so long as the new job is in the same or similar occupational classification as the previous one."  Musunuru v. Lynch, 831 F.3d 880, 884 (7th Cir. 2016); see also Kurapiti, 775 F.3d at 1258 ("Approval of an I-140 visa petition remains valid for beneficiaries with pending adjustment of status applications who change jobs or employers if the adjustment of status application has remained

---

[8]At the time of Shaikh's removal proceedings, no regulations had yet been promulgated to provide guidance on how to determine portability.  While this appeal was pending, effective January 17, 2017, portability language was added to the automatic revocation regulation.  See 8 C.F.R. § 205.1(a)(3)(iii)(C) (2017).  Even if we assume arguendo that the amended version of § 205.1(a)(3)(iii)(C) would apply retroactively, Shaikh could not show he met the requirements for portability in § 204(j), 8 U.S.C. § 1154(j), for the reasons explained herein.

unadjudicated for 180 days or more and the new job is in the same or a similar occupational classification as the job for which the petition was filed.").  By concluding that Shaikh failed to show he had an immediately available visa, the IJ implicitly found that Skaikh failed to demonstrate portability of VSG's I-140 petition.

This Court has not yet addressed whether the portability provision in § 204(j), 8 U.S.C. § 1154(j), sustains the validity of an approved I-140 petition when an employer withdraws the petition more than 180 days after an alien has submitted his application for adjustment of status.[9]  We need not resolve that question here, however, because even assuming arguendo that an otherwise automatically revoked I-140 petition can remain valid under INA § 204(j), 8 U.S.C. § 1154(j), Shaikh did not show he successfully ported his I-140 petition to a new employer or job.  Indeed, Shaikh did not provide any evidence that he had a new employer when VSG withdrew the I-140 petition or when his status was adjusted.  See INA § 204(j), 8 U.S.C. § 1154(j).

There is evidence in the record that Shaikh briefly worked for Worldres and Seisint, Inc. after his April 18, 2001 resignation from VSG and prior to his

---

[9]Shaikh's I-485 application for adjustment of status was filed on August 17, 2001, and was pending for 180 days as of February 13, 2002.  Although VSG sent letters to the INS withdrawing the approved I-140 petition as early as November 2001, we need rely on only the April 22, 2002 letter, which was stamped received by the INS on July 29, 2002, and was thus received by the INS before action on the application for adjustment of status on August 26, 2002.

adjustment of status.  However, he worked for those two employers for only three weeks in April 2001 (Worldres) and four to six weeks in July or August 2001 (Seisint), respectively.  Because it is undisputed that Shaikh was not employed by either of these companies in 2002 when VSG withdrew its I-140 petition and Shaikh's status was adjusted, neither job could have served as the basis to port VSG's I-140 petition under INA § 204(j), 8 U.S.C. § 1154(j).  Simply put, Shaikh needed to obtain new and qualifying employment in order to be eligible to adjust his status after VSG withdrew its I-140 petition, but there is no evidence that he did so.

Finally, we reject Shaikh's argument that the IJ's and the BIA's reliance on VSG's letters to deny him cancellation of removal violated evidentiary rules and his due process rights.  The Federal Rules of Evidence do not apply to immigration proceedings.  Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1347 (11th Cir. 2010).  To safeguard due process, the INA provides that an alien in removal proceedings shall have a reasonable opportunity to examine the evidence against him, present his own evidence, and cross-examine any government witnesses.  See INA § 240(b)(4)(B), 8 U.S.C. § 1229a(b)(4)(B).  As the government submitted the letters to the immigration court on July 30, 2009, Shaikh had ample opportunity to examine the letters before his June 2010 removal hearing.  Apart from conclusory allegations that the letters were fraudulent, Shaikh offered no evidence to suggest

that they were unreliable.  In fact, to the extent Shaikh agrees he submitted his resignation to VSG on April 18, 2001, the letters appear to be reliable.

In any event, to establish a due process violation, an alien in removal proceedings must show, inter alia, the deprivation of a liberty interest.  Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).  We have repeatedly held that an alien does not have a constitutionally protected liberty interest in a purely discretionary form of relief, such as cancellation of removal.  See Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 548-49 (11th Cir. 2011) (cancellation of removal); Scheerer v. U.S. Att'y Gen., 513 F.3d 1244, 1253 (11th Cir. 2008) (adjustment of status); Garcia v. Att'y Gen., 329 F.3d 1217, 1223-24 (11th Cir. 2003) (§ 212(h) waiver); Mohammed v. Ashcroft, 261 F.3d 1244, 1251 (11th Cir. 2001) (cancellation of removal).  Thus, Shaikh cannot show a due process violation with respect to the denial of his request for cancellation of removal.

In sum, Shaikh had the burden to show he was eligible for cancellation of removal, yet he failed to provide evidence to the IJ that the I-140 petition VSG filed on his behalf remained valid when his status was adjusted.  For these reasons, the IJ and the BIA did not err in concluding that Shaikh was not lawfully admitted for permanent residence and therefore was statutorily ineligible for cancellation of removal.

**PETITION DENIED.**

20