[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12709

_____

D.C. Docket No. 0:15-cv-61820-BB

GHIASS MOUHAMED ALI,

Plaintiff - Appellant,

versus

DISTRICT DIRECTOR, MIAMI DISTRICT, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
FIELD OFFICE DIRECTOR, OAKLAND PARK FIELD OFFICE, U.S.
CITIZENSHIP & IMMIGRATION SERVICES,
SECRETARY OF HOMELAND SECURITY,
DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 2, 2018)

Before MARCUS and WILSON, Circuit Judges, and HOWARD,[*] District Judge.

PER CURIAM:

Ghiass Mouhamed Ali, a Syrian citizen and national, appeals from the district court's entry of judgment in favor of the United States Citizenship and Immigration Services ("USCIS") following a bench trial on his petition challenging USCIS's denial of his application for naturalization. Ali argues that the district court erred in affirming the denial of his application based on an erroneous factual finding that he enjoyed diplomatic immunity when his daughter, Sablaa Ali, was born. He also argues that the district court erred by relying on the government database records in determining that he was entitled to diplomatic immunity at the time of his daughter's birth. With the benefit of oral argument, we affirm.

I.

In 1981, Ali began working at the Embassy of the Syrian Arab Republic in Washington D.C. ("Syrian Embassy") as an Arabic secretary. On November 6, 1984, the Syrian Embassy sent a Notice of Termination of Employment with Foreign Government ("Notice of Termination") to the United States Department of State ("State Department") reflecting that Ali's position as a secretary terminated on November 6, 1984. The Notice of Termination contains an undated

---

[*] Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

2

handwritten notation in the upper right corner that reads: "promoted to attaché."[1] On November 16, 1984, Ali left the United States to travel to Syria in order to complete the requirements to become an attaché. He returned to the United States on December 23, 1984.

In early December 1984, while Ali was in Syria, his wife gave birth to the couples' daughter, Sablaa, in Fairfax, Virginia. In 1985 and 2007, the State Department denied Sablaa's applications for a United States passport based on its determination that Sablaa had not acquired United States citizenship at birth because Ali held diplomatic status at the time of her birth.

On February 23, 2006, Sablaa filed a Form I-130 ("Petition for Alien Relative") on Ali's behalf. USCIS approved the request on May 29, 2006, based on its conclusion that Sablaa was a United States citizen. Ali then filed a Form I-485 ("Application to Register Permanent Residence or Adjust Status") to adjust his status to lawful permanent resident, and USCIS approved that request on February 27, 2007. On December 19, 2011, Ali filed an N-400 ("Application for Naturalization"). USCIS denied the Application for Naturalization based on a finding that Sablaa had not acquired United States citizenship at birth due to her father's status as a diplomat, and that Ali's status as a lawful permanent resident

---

[1] An attaché is a diplomatic agent, as defined in Article 1(e) of the 1961 Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 95, and a foreign diplomatic officer pursuant to 8 C.F.R. §101.3(a)(2).

was therefore invalid.  Ali appealed the decision within USCIS.  However, the agency affirmed its finding on July 10, 2015.

On August 30, 2015, Ali filed a petition for review of USCIS's decision in the district court pursuant to 8 U.S.C. § 1421(c).  The district court denied a motion for summary judgment filed by USCIS based on its determination that there was a genuine dispute as to whether Ali enjoyed diplomatic immunity at the time of Sablaa's birth.  To resolve this issue, the district court held a three-day bench trial beginning on January 30, 2017.  In its post trial order, the district court correctly identified the dispositive question as being "not whether [Ali] was actually an attaché at the time of Sablaa's birth but rather, whether [Ali] (and by extension, Sablaa) was entitled to diplomatic privileges and immunities at that time."  After carefully considering the parties' evidence, the district court found that Ali failed to carry his burden of establishing that the State Department had not recognized him as a diplomat prior to Sablaa's birth.  Specifically, the district court found that Ali enjoyed diplomatic immunity as of November 6, 1984, because the Syrian government notified the State Department of his attaché status as of that date.  As such, the district court denied Ali's petition and entered final judgment in favor of USCIS.  In this appeal, Ali contends that the district court erred in finding that he failed to meet his burden of establishing that he was subject to the jurisdiction of

4

the United States at the time of Sablaa's birth, and by relying on the State Department's database records to reach this conclusion.

## II.

We review a district court's findings of fact after a bench trial for clear error. Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F. 3d 1317, 1319 (11th Cir. 2007); Fed. R. Civ. P. 52(a). "Clear error is a highly deferential standard of review." Holton v. City of Thomasville Sch. Dist., 425 F. 3d 1325, 1350 (11th Cir. 2005). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). In conducting our review, we give due regard to the trial judge's opportunity to judge the credibility of witnesses. Anderson, 470 U.S. at 573, 105 S. Ct. 1504. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will not reverse. Morrissette-Brown, 506 F. 3d at 1319 (quoting Anderson, 470 U.S. at 573-74, 105 S. Ct. 1504).

We begin with a brief summary of the law. Under the Immigration and Nationality Act ("INA"), a person may seek de novo review by a district court of a denial of a naturalization application. INA § 310(c), 8 U.S.C. § 1421(c). The applicant bears the burden of establishing his eligibility for citizenship by a

5

preponderance of the evidence, and any doubts are resolved in favor of the United States and against the applicant. See Berenyi v. Dist. Dir., Immigration & Naturalization Serv., 385 U.S. 630, 637, 87 S. Ct. 666, 17 L. Ed. 2d 656 (1967); Taylor v. United States, 231 F. 2d 856, 858 (5th Cir. 1956)[2]; see also 8 C.F.R. § 316.2(b).

In order to become a naturalized United States citizen, an applicant must comply with several statutory prerequisites. See 8 U.S.C. § 1427. Among other things, an applicant must show that he was lawfully admitted for permanent residence in the United States. Id. § 1427(a). "The term 'lawfully admitted for permanent residence' is defined as 'the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws.'" Reganit v. Sec'y, Dep't of Homeland Sec., 814 F. 3d 1253, 1257 (11th Cir. 2016) (quoting 8 U.S.C. § 1101(a)(20)). Thus, to be lawfully admitted for permanent residence, "an alien's adjustment to lawful permanent residence status must be 'in compliance with the substantive requirements of the law.'" Id. (quoting Savoury v. U.S. Att'y Gen., 449 F. 3d 1307, 1317 (11th Cir. 2006)). As such, "an alien whose status [i]s mistakenly adjusted to that of a lawful permanent resident [i]s not an alien lawfully admitted

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

for" permanent residence.    Reganit, 814 F. 3d at 1257 (citing Savoury, 449 F. 3d at 1313-18).

This Court has recognized that:

> [i]n order for an alien to adjust status to that of a lawful permanent resident, the alien must: (1) have been "inspected and admitted or paroled into the United States"; (2) apply for adjustment of status; (3) be eligible to receive an immigrant visa and be admissible to the United States; and (4) have an immigrant visa immediately available to him at the time of filing.

Reganit, 814 F. 3d at 1257 (citing 8 U.S.C. § 1255(a)).  Notably, an immigrant visa is immediately available to an alien-parent of a child with United States citizenship who files a Form I-130 on behalf of the parent.  See 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1).  Generally, "a person born in the United States, and subject to the jurisdiction thereof" is considered a citizen of the United States at birth.  See 8 U.S.C. § 1401(a).  However, a "person born in the United States to a foreign diplomatic officer accredited to the United States, as a matter of international law, is not subject to the jurisdiction of the United States," and therefore "is not a United States citizen under the Fourteenth Amendment to the Constitution."  8 C.F.R. § 101.3(a)(1); see also United States v. Wong Kim Ark, 169 U.S. 649, 693, 18 S. Ct. 456, 42 L. Ed. 890 (U.S. 1898); Slaughter-House Cases, 83 U.S. 36, 73, 21 L. Ed. 394 (1872); Nikoi v. United States, 939 F. 2d 1065, 1066 (D.C. Cir. 1991); Raya v. Clinton, 703 F. Supp. 2d 569, 576 (W.D. Va. 2010).

7

The determination of whether a person is a foreign diplomatic officer "is a mixed question of fact and law." United States v. Al-Hamdi, 356 F. 3d 564, 569 (4th Cir. 2004). The 1961 Vienna Convention on Diplomatic Relations (the "Vienna Convention") and the Diplomatic Relations Act of 1978[3] that incorporated the Convention govern the determination of whether an official is entitled to diplomatic immunity. See Abdulaziz v. Metro. Dade Cty., 741 F. 2d 1328, 1331 (11th Cir. 1984). Importantly, "[t]he Vienna Convention 'premise[s] diplomatic immunity upon recognition by the receiving state,'" which requires notification from the sending state. Raya, 703 F. Supp. 2d at 576 (quoting United States v. Lumumba, 741 F. 2d 12, 15 (2d Cir. 1984)). Specifically, Article 39 of the Vienna Convention provides:

> Every person entitled to privileges and immunities shall enjoy them from the moment he enters the territory of the receiving State on proceeding to take up his post or, if already in its territory, from the moment when his appointment is notified to the Ministry of Foreign Affairs or such other ministry as may be agreed.

Vienna Convention, Apr. 18, 1961, art. 39, 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 95.

In the United States in particular, "'a person's diplomatic status is established when it is recognized by the Department of State.'" Raya, 703 F.

---

[3] Pub. L. No. 95-393, 92 Stat. 808 (1978) (codified at 22 U.S.C. §§ 254a-e (1979 & Supp. 1983)).

8

Supp. 2d at 576 (quoting Restatement (Third) of Foreign Relations Law of the United States § 464 (1987)).  At the bench trial, Clifton Seagroves, Acting Director of the State Department's Office of Foreign Ministry ("OFM"), testified regarding the State Department's accreditation process.  With respect to those physically present in United States, the process begins when the sending country's United States Embassy notifies OFM that the individual will be promoted by sending either a "Notification of Change," or a "Notification of Termination" followed by a "Notification of Appointment."  OFM affords the individual a presumption of immunity as of the date that the foreign embassy indicates the individual will assume new responsibilities.  With respect to those living abroad, the accreditation process begins when the foreign embassy sends a "Diplomatic Note" to the United States Consulate or the United States Embassy abroad to request the issuance of a diplomatic visa.  If a diplomatic visa is issued, then the individual enjoys immunity as soon as he arrives in the United States.

The disputed issue at trial was whether the United States had afforded Ali diplomatic immunity as of the date of Sablaa's birth in early December 1984.  If it had, then he was not subject to the jurisdiction of the United States at the time of her birth, and Sablaa did not acquire citizenship at birth.  If, however, the United States did not afford Ali diplomatic immunity until December 23, 1984, when he

returned to this country, then Sablaa acquired United States citizenship by virtue of her birth in the United States.

The district court's detailed findings of fact reflect that the court considered all of the evidence, including Ali's challenges to the State Department's records as well as his own evidence regarding the date on which he actually began performing his diplomatic duties. The district court credited the evidence presented by USCIS that the State Department afforded Ali diplomatic immunity as of November 6, 1984. The court further found that Ali failed to meaningfully challenge that evidence as his arguments either failed to address the critical issue—the date on which the Syrian government notified the State Department of his attaché status as opposed to the date he began performing the duties of an attaché—or were entirely speculative. Notably, the parties dispute whether the USCIS Certificate of Immunity, which reflects that the State Department afforded Ali diplomatic immunity as of November 6, 1984, is conclusive or whether a district court may look behind it. However, because the district court determined that Ali enjoyed diplomatic immunity at the time of his daughter's birth after holding a bench trial and carefully considering all of the evidence, this Court has no occasion to decide whether a Certificate of Immunity is conclusive.

Ultimately, after reviewing the record, reading the parties' briefs, and listening to the parties' oral arguments, we find that the district court did not err in

concluding that Ali enjoyed diplomatic immunity at the time of Sablaa's birth. Thus, Ali was not "lawfully admitted for permanent residence," and therefore was ineligible for naturalization.

**AFFIRMED.**