[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10696

Non-Argument Calendar

_____

GLORIA LUCIA LOTERO-DIAZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A079-740-728

_____

Before WILSON, ROSENBAUM, and BLACK, Circuit Judges.

PER CURIAM:

Gloria Lucia Lotero-Diaz, a native and citizen of Colombia, seeks review of an order by the Board of Immigration Appeals (BIA) denying her second motion to reopen her immigration proceedings. After review,[1] we dismiss the petition in part and deny it in part.

## I.  BACKGROUND

Lotero-Diaz entered the United States in 2001. Shortly thereafter, the Immigration and Naturalization Service (INS) issued her a notice to appear (NTA), charging her as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Lotero-Diaz conceded removability as charged and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) based on her religion, political opinion, and membership in a social group.

An immigration judge (IJ) first held a merits hearing on Lotero-Diaz's application in 2003, and denied her application for asylum, withholding of removal, and CAT relief. Lotero-Diaz

---

[1] We review *de novo* our subject matter jurisdiction over a petition for review. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). We also review any constitutional claim or question of law *de novo*. *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). We review the BIA's denial of a motion to reopen for an abuse of discretion, although we "review any underlying legal conclusions *de novo*." *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022).

administratively appealed the IJ's decision to the BIA, and the BIA concluded one of the transcripts of her merits hearing was missing, and remanded to the IJ for further proceedings, "including a new hearing, if necessary."

At a second merits hearing in 2006, the IJ held a new hearing, but once again denied Lotero-Diaz's application for asylum, withholding of removal, and CAT relief. She administratively appealed the decision to the BIA, and the BIA affirmed the IJ's second decision in February 2008. Lotero-Diaz did not seek review of the BIA's decision in this Court.

Instead, Lotero-Diaz later sought to reopen the proceedings, presenting additional evidence related to her asylum claim. The BIA denied Lotero-Diaz's first motion to reopen in September 2008. Lotero-Diaz again did not seek review in this Court.

In July 2020, Lotero-Diaz filed a second motion to reopen—the present one—to "reopen and remand." In this second motion to reopen, she argued the 2001 NTA had been invalid because she was never an arriving alien, but in fact had been admitted to the United States. She contended this error had prejudiced her, since she had applied for adjustment of status based on her marriage to her lawful permanent resident husband.[2] She contended the Department of Homeland Security (DHS) had wrongfully withheld

---

[2] The United States Citizenship and Immigration Services concluded, after an interview, that Lotero-Diaz had not established her marriage was not entered into for the primary purpose of circumventing the immigration laws of the United States.

the relevant necessary evidence showing she had been admitted. She asserted the evidence was new to her and had "solely been in [DHS's] possession since her admission and last entry to the United States in 2001." She explained she had sued DHS under the Freedom of Information Act (FOIA) in 2020 and had obtained the relevant evidence supporting her motion to reopen.

Lotero-Diaz contended the Government had admitted her in 2001, but it had then withheld evidence that she had been admitted, in violation of 8 U.S.C. § 1361. She also asserted that, by charging her as inadmissible rather than removable, the Government had lowered its own evidentiary burden. She asserted she was thus eligible for adjustment of status and voluntary departure. She argued she might ultimately be removable, but not under 8 U.S.C. § 1182(a)(7), as was charged. Lotero-Diaz contended the changed circumstances justified reopening and a "*de novo* review of her adjustment of status application before an [IJ.]" She argued the Government's "affirmative misconduct" justified tolling the time and number bars on her motion to reopen.

In support, Lotero-Diaz attached several documents. One document showed that an official had stamped her passport "ADMITTED Jun 29 2001." Other documents, including a "Consular Notification" dated June 29, 2001, explained that Lotero-Diaz had sought admission as a visitor for pleasure, but she had been stopped "[a]t secondary inspection" when it was determined that she had remained over her visa. Another document dated the same day showed an Immigration officer provided her a "determination

of inadmissibility," asserting she was "an immigrant not in possession of a valid unexpired immigrant visa or any other valid entry document in lieu of an immigrant visa."

Lotero-Diaz also attached a written statement explaining the events of June 29, 2001. She recalled being given her stamped passport and walking toward "a large place where people were picking up luggage." After she got her luggage, she was stopped by "Customs Police," who told her that she had drugs and she should follow him. Although she denied having drugs, she was ultimately handed over to immigration officials. They detained her for several hours and forced her to sign various papers she did not understand. In addition, immigration authorities kept her passport with the admission stamps after she was released on parole.

A single judge of the BIA denied Lotero-Diaz's second motion to reopen in 2022. First, the BIA noted her second motion to reopen was "both number-barred and untimely." And, while it noted she had accused the DHS of fraud, it found no basis "upon which either bar should be tolled." The BIA concluded her arguments were "premised on a mistaken view of the legal significance of a stamp." It explained an applicant for admission whose passport is stamped but who is prevented from entering the main terminal of an airport by an immigration officer does not enter the United States or become admitted "unless and until the official restraint ceases and the noncitizen is permitted to physically enter the United States without official restraint." And while the BIA agreed an immigration officer's admission stamp in a passport "[w]as

generally strong evidence of admission," it noted that such evidence could be overcome where evidence showed the requirements for admission were not met.

The BIA noted Lotero-Diaz's second motion to reopen included evidence showing "she was referred to secondary inspection at the San Juan airport on June 28, 2001, without her having first been permitted to enter the United States free of official restraint." At a secondary inspection, she was detained and found to be inadmissible, which led to a "withdrawal of application for admission" and the cancellation of her visa. Thus, the BIA concluded she was never admitted to the United States, and she was, thus, properly charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Accordingly, the BIA denied her second motion to reopen because it was "both time-and number-barred and the factual basis upon which [she] s[ought] to avoid these limitations [wa]s not supported by the record."

Lotero-Diaz timely filed a petition for review of the order denying the second motion to reopen.

## II.  DISCUSSION

Lotero-Diaz asserts several issues in her petition, which we address in turn. The Government contends we lack jurisdiction over portions of Lotero-Diaz's petition, and asserts we should deny the remainder of her petition.

## A.  *Sua Sponte Reopening*

Lotero-Diaz contends the BIA erred in refusing to exercise its *sua sponte* authority to reopen.  The BIA may reopen a case pursuant to its *sua sponte* authority at any time, though it requires a showing of exceptional circumstances to do so.  *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1283 (11th Cir. 2016) (citing 8 C.F.R. § 1003.2(a)); *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293-94 (11th Cir. 2008).  We lack jurisdiction to review a BIA decision denying a motion for *sua sponte* reopening.  *Butka*, 827 F.3d at 1283-84.  But we have left open the question of whether we may exercise jurisdiction over constitutional claims related to an underlying request for *sua sponte* reopening.  *Id.* at 1285 n.6 (citing *Lenis*, 525 F.3d at 1294 n.7).  To assert a constitutional claim over which we might have jurisdiction, a petitioner must allege at least a colorable constitutional violation, in other words, the claim must have "some possible validity." *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 & n.2 (11th Cir. 2007).

We lack jurisdiction to review the BIA's decision not to reopen under its *sua sponte* authority.  *Lenis*, 525 F.3d at 1293-94; *Butka*, 827 F.3d at 1283-84.  While Lotero-Diaz attempts to raise a constitutional due process claim, *Butka*, 827 F.3d 1285 n.6, the denial of purely discretionary *sua sponte* reopening cannot present a viable due process claim.  *See Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008) (explaining a failure to receive relief that is purely discretionary does not amount to a deprivation of a liberty interest and thus cannot constitute a due process violation).  Thus, Lotero-Diaz has not presented a colorable constitutional claim in this

respect over which this Court might have jurisdiction. *Arias*, 482 F.2d at 1284 & n.2.

## B. 2008 Removal Order

Lotero-Diaz asserts her 2008 removal order was obtained unlawfully under 8 U.S.C. § 1361. We lack jurisdiction to review (or estop the government from enforcing) Lotero-Diaz's 2008 removal order, as she did not timely file a petition for review of that order. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 870 (11th Cir. 2018) (stating we lack jurisdiction to "review earlier trips through immigration proceedings"). "[T]o seek judicial review of [the BIA's 2008] order, [Lotero-Diaz] must have filed a petition with [this] Court within 30 days of the issuance of that order," but she did not do so. *See Gaksakuman v. U.S. Att'y Gen.*, 767 F.3d 1164, 1168 (11th Cir. 2014) (citing 8 U.S.C. § 1252(b)(1)).

## C. Reasoned Consideration

Lotero-Diaz asserts the BIA's failure to provide her a hearing violated her Due Process rights and constituted a lack of reasoned consideration. To enable our review, the BIA must have given "reasoned consideration" to a petitioner's application for relief and made adequate findings. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019). The BIA gave reasoned consideration to Lotero-Diaz's second motion to reopen. The BIA only needed to draft a decision that showed it "ha[d] considered the issues" and arguments Lotero-Diaz "raised and announced its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." *Jeune v. U.S.Att'y Gen.*, 810 F.3d 792, 803 (11th

Cir. 2016) (quotation marks and brackets omitted). The BIA's opinion was detailed, it addressed Lotero-Diaz's central claims, and it provided this Court with the basis for reviewing whether reopening was warranted.

## D.  Merits of Motion to Reopen

Lotero-Diaz asserts the BIA should have granted her second motion to reopen the proceedings because her 2008 removal order was obtained unlawfully under 8 U.S.C. § 1361. She contends reopening was warranted because she presented new evidence, and that evidence gave the IJ jurisdiction over her pending application for adjustment of status. She asserts that both the time and number bars should be equitably tolled because of the nature of the Government's 8 U.S.C. § 1361 violation and the fact she could not have discovered the violation earlier. Alternatively, she argues that, even if the BIA "has no legal duty to provide [a] remedy for a violation of 8 U.S.C. § 1361," this Court should equitably estop the Government from executing the removal order, because the INS failed to file all records subject to mandatory disclosure in immigration proceedings. She also contends the BIA impermissibly conducted its own fact-finding on whether she was free of official restraint in order to reject her motion to reopen.

The BIA did not err in concluding Lotero-Diaz's second motion to reopen was time-and number-barred under the relevant regulations. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i) (providing except for certain motions by battered spouses, children, and parents, a noncitizen may file only one motion to reopen her removal

proceedings, and it must be filed within 90 days of the final administrative removal order).  And, assuming without deciding that it was empowered to toll or estop these bars, the BIA did not abuse its discretion in finding such an action was not warranted.

### 1. *Equitable Estoppel*

We have noted "the Supreme Court has never resolved whether, and in what manner, the doctrine of equitable estoppel can be applied against the federal government." *Tefel v. Reno*, 180 F.3d 1286, 1302 (11th Cir. 1999).  The traditional elements of an equitable estoppel claim are: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things (2) willfulness or negligence with regard to the acts, conduct or acquiescence and (3) detrimental reliance by the other party upon the state of things so indicated."  *Id.* (quotations omitted).  But "to establish a claim for equitable estoppel against the government," we have held, "the party seeking to establish estoppel must prove, in addition to the traditional elements of estoppel, some affirmative misconduct by the government." *Id.* at 1303. "Affirmative misconduct requires more than governmental negligence or inaction, because a traditional claim of estoppel already requires at least negligence by the party being estopped." *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1319 (11th Cir. 2006) (quotations omitted).

"Whenever any person makes an application for a visa . . . the burden of proof shall be on such person to establish that [the beneficiary] is eligible to receive such visa . . . or is not inadmissible under any provision of this chapter."  8 U.S.C. § 1361.

Additionally, "in any removal proceeding . . . against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, *but in presenting such proof he shall be entitled to the production of his visa or other entry document, if any, and of any other documents and records . . . pertaining to such entry in the custody of the Service*." *Id.* (emphasis added).

Assuming an equitable estoppel argument were available, Lotero-Diaz did not show any "affirmative misconduct" by the Government in failing to turn over the documents that showed her passport had been stamped "admitted." *Tefel*, 180 F.3d at 1303; *Savoury*, 449 F.3d at 1319. The Government's failure to disclose the information, standing alone—while arguably a violation of the text of 8 U.S.C. § 1361 and potentially negligent—does not constitute affirmative misconduct. *See* 8 U.S.C. § 1361, *Savoury*, 449 F.3d at 1319.

### 2. Equitable Tolling

The 90-day deadline for a motion to reopen proceedings is not jurisdictional and is subject to equitable tolling. *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1362–64 & n.4 (11th Cir. 2013) (en banc). Typically, equitable tolling of a time deadline requires a showing the litigant (1) has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way. *Bing Quan Lin*, 881 F.3d at 872. We have suggested, without deciding, the numerical limitation on motions to reopen may also be equitably

tolled by an identical showing. *Ruiz-Turcios v. U.S. Att'y Gen.*, 717 F.3d 847, 850–51 (11th Cir. 2013).

"Admission" and "admitted" denote "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), "entry" was defined as the "coming of any alien into the United States, from a foreign port or place or from an outlying possession, whether voluntary or otherwise." 8 U.S.C. § 1101(a)(13) (1995). And, in applying the pre-IIRIRA statute, the BIA determined an "entry" requires, *inter alia*, "freedom from official restraint." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320-21 (11th Cir. 2001) (applying IIRIRA transitional rules). In *Matter of Patel*, the BIA considered whether an applicant had "entered" the United States "as that term [was] defined for the purposes of the immigration laws, and should therefore have been placed in deportation proceedings." 20 I. & N. Dec. 368, 369-70 (BIA 1991). The BIA, applying the pre-IIRIRA statute, used the same test as we discussed in *Farquharson* requiring, among other things, "freedom from official restraint." *Compare id.* at 370, *with Farquharson*, 246 F.3d at 1320-21.

Lotero-Diaz has not shown the BIA abused its discretion in concluding equitable tolling did not apply to her case. The BIA did not abuse its discretion in concluding equitable tolling was not warranted on these facts, where, among other things, the Government's failure to disclose the contested documents did not

prejudice Lotero-Diaz. The evidence Lotero-Diaz obtained through her FOIA suit did not establish she had been "admitted" to the United States. Specifically, as the BIA noted, "admission" is a term of art that—like the pre-IIRIRA term "entry"—appears to require "freedom from official restraint." *See Farquaharson*, 246 F.3d at 1320-21; *Matter of Patel*, 20 I. & N. Dec. at 369-70. The evidence in the record shows Lotero-Diaz was never free from official restraint on June 29, 2001, in the San Juan airport, such that she was admitted to the country. Therefore, even if equitable tolling could be warranted based on a violation of 8 U.S.C. § 1361, Lotero-Diaz did not show the alleged violation prejudiced her nor that the evidence obtained was material. Without showing any prejudice, she also cannot show a due process violation. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (stating to establish a due process violation, a non-citizen must show she was deprived of liberty without due process and the asserted errors caused her substantial prejudice).

### 3. *Impermissible Factfinding*

The BIA generally cannot engage in *de novo* factfinding, and when it does so, it commits legal error. 8 C.F.R. § 1003.1(d)(3); *Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1314 (11th Cir. 2013). Rather, the BIA reviews the IJ's findings only for clear error, and it reviews "questions of law, discretion, and judgment and all other issues" *de novo*. 8 C.F.R. § 1003.1(d)(3)(i)-(ii).

Contrary to Lotero-Diaz's assertions, the BIA did not engage in impermissible factfinding in ruling on her motion. Evaluation

of evidence in the first instance is necessary when analyzing a motion to reopen based on evidence alleged to be new or previously unavailable. The BIA did not err in reviewing the submitted evidence to determine whether to reopen Lotero-Diaz's case, as the regulations require it to do so to determine whether reopening is warranted. *See* 8 C.F.R. § 1003.2(c)(1).

## III. CONCLUSION

In conclusion, Lotero-Diaz was never admitted into the United States and her various arguments based on an "admitted" status fail. Lotero-Diaz has not shown the BIA acted arbitrarily or capriciously in denying her motion to reopen. *See Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013) (stating when reviewing for an abuse of discretion, we will only determine whether the BIA exercised its discretion arbitrarily or capriciously). Accordingly, we dismiss the petition in part and deny it in part.

**PETITION DISMISSED IN PART, DENIED IN PART.**